## NEW FICTION PUB. CO. v. STAR CO.

### (District Court, S. D. New York. February 15, 1915.)

1. COPYRIGHTS ☞46—INFRINGEMENT—FAILURE TO RECORD ASSIGNMENT.

The recording of an assignment of a copyright, as provided for by Act March 4, 1909, c. 320, § 44, 35 Stat. 1084 (Comp. St. 1913, § 9565), is not necessary to the protection of the rights of the assignee against an infringer.

[Ed. Note.—For other cases, see Copyrights, Cent. Dig. § 44; Dec. Dig. ☞46.]

2. COPYRIGHTS ☞47—ASSIGNMENT OF SPECIAL RIGHTS—CONSTRUCTION.

An assignment of a part of the rights protected by a copyright, as of the right of serial publication, operates merely as a license, and does not carry the right to sue for infringement given to the "copyright proprietor" by Act March 4, 1909, c. 320, § 25, 35 Stat. 1081, as amended by Act Aug. 24, 1912, c. 356, 37 Stat. 489 (Comp. St. 1913, § 9546).

[Ed. Note.—For other cases, see Copyrights, Cent. Dig. § 45; Dec. Dig. ☞47.]

3. WORDS AND PHRASES—"SERIAL RIGHTS."

The words "serial rights" are understood to comprehend all publishing rights, including magazine and newspaper publishing rights, and excepting only book, dramatic and scenario rights.

4. COPYRIGHTS ☞36 — PROTECTION OF COPYRIGHTED WORK — "COMPONENT PARTS."

The phrase "component parts," as used in Act March 4, 1909, c. 320, § 3 (Comp. St. 1913, § 9519), providing that "the copyright provided by this act shall protect all the copyrightable component parts of the work copyrighted," does not mean subdivision of rights, licenses, or privileges, but refers to the separate chapters, subdivisions, acts, and the like of which most works are composed.

[Ed. Note.—For other cases, see Copyrights, Cent. Dig. § 37; Dec. Dig. ☞36.]

In Equity. Suit by the New Fiction Publishing Company against the Star Company. On motion to dismiss bill. Motion sustained.

John T. Sturdevant, of New York City, for the motion.

Pace & Stimpson, of New York City (Frank D. Wynn, of New York City, of counsel), opposed.

MAYER, District Judge. The defendant has moved under equity rule 29 to dismiss the bill of complaint, upon the ground that upon the face of the bill no cause of action against defendant is disclosed, and that the court is without jurisdiction to entertain the suit. The parties are New York corporations, with their places of business in the borough of Manhattan, city of New York.

The sole question is whether plaintiff is the assignee of or merely the licensee under a copyright, and, as this question is said to be important, a full statement of the facts as disclosed on the face of the bill seems to be desirable. On July 9, 1913, one Edward Goodman, being the author and proprietor of an unpublished drama entitled "En Deshabille," copyrighted it as provided by the Copyright Act. Before copies of the drama were produced for sale, Goodman entered into an arrangement with plaintiff whereby, as plaintiff claims, he assigned to plaintiff

the "serial rights" in and to the drama. Plaintiff paid Goodman $50 by check, and Goodman indorsed the check. The check, with its indorsement, is the evidence upon which plaintiff relies in asserting an assignment, and is as follows:

"No. 697.    New York, Dec: 5, 1913:

"The Mutual Bank, 49–51 West 33d Street: Pay to the order of Edward Goodman ($50 $^{00}/_{100}$) fifty & $^{00}/_{100}$ dollars.

"The New Fiction Publishing Company,
"W. M. Clayton, President."

On the margin of said check:

"The New Fiction Publishing Co., 16 East 33d St., New York."

Indorsed:

"For all serial rights to one act play, En Deshabille. For deposit. Edward Goodman.

"Indorsement correct. The Fifth Avenue Bank of N. Y.

"Received payment through New York Clearing House, Dec. 6, 1913. Addition The Fifth Avenue Bank of New York."

[3] The words "serial rights" have, as plaintiff alleges (and this allegation must be accepted for the purposes of this motion), a definite meaning among publishers, and are understood to comprehend all publishing rights, including magazine and newspaper publishing rights, and excepting only book, dramatic, and moving picture scenario rights.

Prior to the transfer of the "serial rights," viz., about September 16, 1913, Goodman sold to the Managers' Producing Company the right to perform the play on the stage, and thereafter this Managers' Producing Company gave performances at various theaters in the United States and Canada, and, because of the interest aroused by the play, the right to print and publish the drama in a magazine became of value.

Plaintiff is the proprietor of a monthly magazine called "Snappy Stories," and as "En Deshabille" could be readily printed in one issue, it was so printed in the March, 1914, issue. Before that, however, namely, on Sunday, January 18, 1914, and without the consent of Goodman or plaintiff, substantial parts of Goodman's play were published in the New York American, a newspaper owned by defendant.

The allegation is that this publication in the New York American satisfied the public desire to read the play and thereby diminished the sales and profits of plaintiff's magazine. The relief asked for is that prescribed by section 25 of the Copyright Act in cases of infringement, as follows:

"(1) For an injunction restraining the infringement; (2) for destruction of infringing prints and matrices; (3) for an accounting and payment of all profits ensuing from the sale of the copyrighted material; and (4) for a penalty of $1.00 for each and every infringing copy made or sold by or now in the possession of defendant and the defendant is required to make discovery of the number of such copies made or sold by it and now in its possession."

It is asserted that the March, 1914, issue of "Snappy Stories" was duly copyrighted in February, 1914; but that fact is of no consequence and adds nothing to plaintiff's case, in view of the previous copyright of Goodman.

[1] At the outset, it may be well to clear away some misapprehensions. If the transaction described constitutes an assignment of the

copyright, it was not necessary for the purposes of this cause of action that the assignment should be recorded as provided in section 44 of the act. That section protects subsequent purchasers or mortgagees for value, and is akin in principle to the filing or recording acts, which relate to bills of sale or chattel mortgages. As against infringers, an assignee would have a cause of action, irrespective of the recording provisions of the act.

Further, the check transaction, although informal, clearly shows the intention of Goodman to sell to plaintiff all rights to publish in magazines and newspapers.

[2] So that the sole question, as indicated supra, is whether plaintiff is an assignee or licensee. When Goodman obtained his copyright, he acquired the exclusive rights conferred by section 1 of the act, and also the right to assign permitted by section 42. Under the act but one assignment is necessary for absolute protection. Less than an assignment of the entire copyright cannot carry the causes of action (if the right is invaded) which the act accords to the owner or assignee. Mr. Bowker in "Copyright, Its History and Its Law" (Edition 1912) at page 49, aptly states the proposition:

"In respect to the right to limit the use of his work under his sale, gift, loan, grant, lease, etc., for a special purpose, or at a special price, or for a special time, or in a special locality, or to a special person, these powers of limitation, though implied in the grant of copyright, are dependent for their enforcement rather upon the law of contracts than upon copyright law. There can be no such thing as a copyright for a special purpose, or for a special locality, or under other special conditions, for there can be only one copyright, and that a general copyright, in any one work. But specific contracts can be made, enforceable under the law of contracts, as for the sale of a copyrighted book within a certain territory, provided such contracts or limitations are not contrary to other laws. Although record of assignment in the Copyright Office is provided for by the law only for the copyright in general, the separate estates, as a right to publish in a periodical and the right to publish as a book, may be sold and assigned separately, and the special assignment recorded in the Copyright Office, though this does not convey a right to substitute in the copyright notice a name other than that of the recorded proprietor of the general copyright, which can only be changed as specifically provided in the law under recorded assignment of the entire copyright."

That Goodman transferred or licensed to plaintiff only a special or limited right is made especially clear by the fact that he sold the dramatic rights to some one else, and this, obviously, he could not have done, had he divested himself of his copyright by assignment. It must be remembered throughout that the remedies here sought are statutory creations. They have been made drastic to protect authors against wrongful invasions, but they were not intended to be cumulative, so as to subject a defendant to more than one recovery for the redress of one wrong.

Under section 25 of the act, which enumerates the remedies, an infringer, among other things, "shall be liable * * * to pay to the *copyright proprietor* such damages as the *copyright proprietor* may have suffered due to infringement." Yet, if plaintiff's theory were right, the anomalous result would follow that not only plaintiff, but every other licensee of plaintiff, could severally sue the defendant, and

each obtain a separate judgment for one and the same violation of a copyright which no one of them owned, but in respect of which each had only certain special or limited rights.

[4] It is urged, however, that under section 3 of the act the right here claimed is distinctly conferred. That section is as follows:

"Sec. 3. That the copyright provided by this act shall protect all the *copyrightable component parts* of the work copyrighted, and all matter therein in which copyright is already subsisting, but without extending the duration or scope of such copyright. The copyright upon composite works or periodicals shall give to the proprietor thereof *all the rights* in respect thereto which he would have if each part were *individually copyrighted* under this act."

Without intending to construe this section further than necessary for the purposes of this case, it is clear that "component parts" does not mean subdivision of rights, licenses, or privileges, but refers to the separate chapters, subdivisions, acts, and the like of which most works are composed.

Finally, it is said that if the owner of rights such as in the case at bar cannot sue under the act, but is remitted to an appropriate action because of the invasion of its contract rights obtained from the author, then that a valuable protection will be lost to the author as the result of the diminished protection to his transferee. I think I fully appreciate the new situations which the enlarged use of copyrighted works has developed commercially. The motion picture scenario, the daily short story in the newspaper, the growing vogue of the concise one-act play and of the short-story magazine, have all been developments towards specialization, which doubtless render particular rights of increasing importance; but if the statute has not met these new developments, and in this regard I do not express any opinion, the time-worn answer of the courts is that the subject-matter then becomes one for legislative consideration.

An examination of many reported cases fails to disclose a disposition of the precise question at bar, but it may be helpful to refer to Jude's "Liedertafel" Case, L. R. (1907) 1 Ch. 651; Empire City Amusement Co. v. Wilton, 134 Fed. 133.

As the suit cannot be maintained under the Copyright Act, and as diversity of citizenship is lacking, the motion to dismiss the bill is granted, with costs.

NOTE.—It will be understood that I am not passing on the question which would be presented if Goodman were a party plaintiff.