## FITCH v. YOUNG et al.

### (District Court, S. D. New York. March 15, 1916.)

1. COPYRIGHTS ☞36—EXTENT OF RIGHTS ACQUIRED—"PLAY RIGHT."

"Play right" and "copyright" are distinct under the old copyright statute, though printed publication will forfeit both, and though one statutory copyright will protect both; and an author of a play, in assigning it to a publisher, was therefore justified in reserving his common-law play right, and the necessary formalities respecting the printed play created a statutory play right, which the publishers held in trust for him, and a statutory copyright, which they held beneficially.

[Ed. Note.—For other cases, see Copyrights, Cent. Dig. § 37; Dec. Dig. ☞36.

For other definitions, see Words and Phrases, First and Second Series, Copyright.]

2. COPYRIGHTS ☞47—ASSIGNMENTS—RIGHTS ASSIGNED—"PUBLISH."

Where the publisher of a play, after copyrighting it, assigned the copyright thereof, with other copyrights, to the author by an assignment which provided that it should not affect the right of the publisher to publish such works, and that it should continue to have the sole and exclusive right to publish them as though the assignment had not been made, it conveyed to the author only the statutory play right, and reserved the copyright, since, while the statute, in defining copyright, uses other words than "publish," they were all covered by the word "publish," as used in the assignment.

[Ed. Note.—For other cases, see Copyrights, Cent. Dig. § 45; Dec. Dig. ☞47.

For other definitions, see Words and Phrases, First and Second Series, Publish.]

3. COPYRIGHTS ☞76—SUITS FOR INFRINGEMENT—PARTIES ENTITLED TO SUE.

Rev. St. § 4952, provided prior to the present copyright statute that the author of any dramatic composition should upon complying therewith have the sole liberty of printing, publishing, copying, and vending it, and of publicly performing or representing it, or causing it to be performed or represented by others. The author of a play prior to the present statute assigned it to the M. Co., who procured a copyright and assigned the copyright to the author, reserving the right to publish the work. *Held*, that the author could not sue for an infringement, consisting of the publication of a story, since section 4952 did not give the exclusive right to novelize a copyrighted play, and a novelization was not an infringement, unless it amounted to a copy, in which case it was an infringement of the rights of the M. Co., which had the exclusive right of copying.

[Ed. Note.—For other cases, see Copyrights, Cent. Dig. § 68; Dec. Dig. ☞76.]

In Equity. Suit by Alice M. Fitch, as sole executrix of William C. Fitch, against Courtland H. Young and another. Bill dismissed.

Suit upon a copyright injunction and incidental remedies. The plaintiff is executor of one William G. Fitch, who was residuary legatee and executor of the playwright, Clyde Fitch, and the case may be regarded as though Clyde Fitch were living and were the plaintiff. He wrote a play called "Truth," which he assigned to the MacMillan Company, which took out a copyright on June 5, 1907, and published the same in book form. In the notice of copyright the MacMillan Company declared that all acting rights both professional and amateur were reserved to Clyde Fitch, but that licenses must be

procured from the MacMillan Company. On January 20, 1908, the MacMillan Company assigned the copyright to Clyde Fitch of "Truth" and four other plays with the following clause: "This assignment shall not affect in any way the right of the MacMillan Company to publish the above-described works. The company shall continue to have the sole and exclusive right to publish said works as though this assignment had not been made." "Truth" was presented for some time both in the United States and in England and had some dramatic success. It was revived some time later and was again successful.

The defendant Young is the publisher of a monthly magazine of short stories and received from the defendant Sallie Underhill a story called the "Liar," which he published in the issue of October, 1913, and which is the supposed infringement. Young knew nothing of the sources from which Sallie Underhill obtained the story, and has not yet been able to learn, because she has not been served, nor has she been examined. The defendant raises three points: That Clyde Fitch never assigned the copyright to the MacMillan Company since he reserved his dramatic rights and hence the copyright is invalid; that the assignment by the MacMillan Company to Clyde Fitch was likewise invalid being for a part of the copyright only; that the story is not an infringement of the play.

Bernard M. L. Ernst, of New York City, for plaintiff.
Charles A. Taussig, of New York City, for defendant Young.

LEARNED HAND, District Judge (after stating the facts as above). [1] The second point raised by the defendant seems to me determinative of the case. I think that play right and copyright are quite distinct under the statute, in spite of the fact that printed publication will forfeit both, and that one statutory copyright will protect both. If so, Clyde Fitch was justified in reserving his common-law play right from the original assignment to the MacMillan Company, and they could, by the necessary formalities on the printed play, create a statutory play right, which they held in trust for him, and a statutory copyright which they held beneficially. This is the effect of Judge Holt's decision as to the right to dramatize, a similar right, in Ford v. Charles E. Blaney Co. (C. C.) 148 Fed. 842. Judge Noyes in Dam v. Kirk La Shelle, 175 Fed. 902, 99 C. C. A. 392, 41 L. R. A. (N. S.) 1002, 20 Ann. Cas. 1173, in citing Ford v. Charles E. Blaney Co., supra, speaks of this as "probably" the law, and Judge Hazel had so held in the court below. 166 Fed. 589.

[2] The assignment by the MacMillan Company to Clyde Fitch was, however, clearly intended, I think, to convey only the play right and to reserve the copyright. This follows from the fact that the exclusive right to publish was reserved to them, and that that exclusive right included all that they had, except the statutory play right held in trust for Clyde Fitch. It is true that the statute uses more words than "publish" to define copyright, including the words "copy, publish, print, complete, vend," and others; but they are all clearly intended to be covered by the word "publish," as used in the assignment, and would have prevented Clyde Fitch from himself publishing the play, had he wished. The analogy of patents is apt, in which the form of an assignment does not count, and in which even a license for the term of the patent to use, make, and vend will, if exclusive, operate as an assignment.

Waterman v. Mackenzie, 138 U. S. 252, 11 Sup. Ct. 334, 34 L. Ed. 923.

[3] The plaintiff seems to suppose that the composer of a play gains under the statute not only copyright and play right, but also the right to novelize it, analogous to the right to dramatize given by R. S. § 4952. It is true that the right to novelize is created by section 1 (b) of Copyright Act of 1909 (Act March 4, 1909, c. 320, 35 Stat. 1075 [Comp. St. 1913, § 9517]), and it is quite possible that an assignment like that at bar would to-day convey that right to Clyde Fitch. The right to novelize did not, however, exist before the Copyright Act of 1909, and the only basis for suit against a story as piracy which could arise under this copyright would be by virtue of the exclusive right to "copy" granted by section 4952 of the Revised Statutes, a right which the MacMillan Company, the owner of the copyright, alone has the right to invoke. Any right to novelize the play in such form as does not result in a "copy" is a right in the public domain, and would inhere in the first novelizer, whether he were Clyde Fitch or another; any right so to change the play that a court would still consider it a "copy" of the play is within the exclusive control of the MacMillan Company. This conclusion is in no sense contrary to the decision in New Fiction Publishing Co. v. Star Co., 220 Fed. 994, because the plaintiff there did not have copyright at all, but only a license to publish the story serially, a quite limited part of the copyright, and one not vesting in the licensee any right to sue an infringer, any more than an exclusive right to vend a patented invention would have enabled the licensee to sue. Judge Sprague, indeed, in Roberts v. Myers, 20 Fed. Cas. No. 11906, held that an assignment of the right to perform a play for a limited period would give the assignee the right to sue; but that was certainly an extension of the rules applicable to patents, and a step further than it is necessary to go in the case at bar.

If, on the other hand, the play right and copyright be deemed to be indivisible, in such sense that one may not be assigned without the other, while it is true that the MacMillan Company would become only a licensee under the assignment to Clyde Fitch, yet there would be a fatal defect in the copyright itself. For in that case the MacMillan Company could hardly be regarded as the "proprietor" of the indivisible common-law literary property out of which alone the statutory play right and copyright could be created. It can hardly be possible to treat this as an indivisible right for the purpose of one kind of assignment and as divisible for another.

I conclude, therefore, that the plaintiff has brought this suit upon the mistaken theory that the right of novelization existed under the earlier act, when in fact the statute created only play right and copyright. It is, indeed, a very troublesome question whether the MacMillan Company could succeed as owner of the copyright in holding the defendant for publishing a copy of the play. I have not the least doubt that the story was a cheap and vulgar plagiarism: The parallelism is so complete and minute as to admit of not the slightest doubt that it was slavishly pirated in plot and characters; but it has never been very satisfactorily established, and probably never can be, at what

point a plagiarism ceases to copy the. expression of an author's ideas and steals only the ideas themselves. No one can test that question but the MacMillan Company.

. The bill will be dismissed for failure of title, with costs.