### PUBLIC LEDGER v. NEW YORK TIMES et al.

(District Court, S. D. New York. August 8, 1921.)

1. **Copyrights ⊙=24—"Proprietor" equivalent to "assign."**

   The word "proprietor" as used in Copyright Act, § 8 (Comp. St. § 9524), is equivalent to "assign," and if an author retains a part of what goes to make up any of the recognized statutory divisions of his rights, his assignee is not a proprietor, who may secure a copyright.

   [Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Assignee; Proprietor.]

2. **Copyrights ⊙=24—Contract held not an assignment of literary property which carried the right to copyright.**

   The Times, of London, made a contract with complainant, proprietor of a newspaper in Philadelphia, by which it agreed to maintain a room in London where it would furnish to complainant's representative advance proofs of all special news articles published by it, as early as reasonably possible to enable complainant to make a copy or résumé thereof for transmission for publication in newspapers of the United States and Canada, to which complainant was authorized to sell the same. The Times further agreed that it would not furnish such proofs to other persons for transmission to American papers, and that it would do all that it reasonably could to secure to complainant the full benefit of the contract. *Held*, that the contract merely gave a license to use such matter, and did not constitute an assignment which made complainant the proprietor with the right to copyright in the United States under Copyright Act, § 8 (Comp. St. § 9524).

3. **Trade-marks and trade-names and unfair competition ⊙=68—Bill for unfair competition held to state a cause of action.**

   A bill for unfair competition, which alleged that complainant had a contract giving it the exclusive right to sell to American newspapers news articles published in the Times, of London, and that defendant, with knowledge of such contract, republished from the Times an important letter, under a heading falsely stating that it was by permission of the Times, *held* to state a cause of action.

In Equity. Suit by the Public Ledger against the New York Times and others. On motion to dismiss bill. Granted as to first cause of action, and denied as to the second.

This is a motion to dismiss a bill in equity upon its face. The bill is composed of two causes of action, one in copyright and the other in unfair competition. In each it alleged that the complainant was a Pennsylvania, and the defendant a New York, corporation, and the individual defendants citizens of New York. In each it alleged that "the value of the matter or thing actually in controversy in this case is in excess of $3,000."

In substance the first cause of action alleged that both parties were the owners of well-known newspapers in Philadelphia and New York, respectively, and that each maintained an organization for gathering news all over the world, and purchases news from other news-gathering agencies, in some cases for resale. The plaintiff made a contract with the Times, of London, which is the basis of its rights, and the substance of which is as follows:

The Times would provide a room in London at which it would produce for a representative of the plaintiff the "proofs" of all special news articles and other matter, published "as early as is reasonably possible to enable" the plaintiff to make such copy or résumé thereof as it might think best for transmission for publication in newspapers in the United States and Canada. When possible these "proofs" should be produced enough in advance of the date of their publication in the Times to enable the plaintiff to mail proofs to Phil-

⊙=For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

adelphia, the Times to indicate the date of release in such cases. The plaintiff might make such arrangements as it thought fit for the sale for publication in any other newspaper or periodicals in the United States of America and Canada of such "news and special articles and other matter" as it wished. The plaintiff agreed to publish all such matter under the heading "London Times News Service," and to secure the insertion of the same heading by any papers to which it sold the "news." The Times should not supply to any other persons the "proofs" for transmission to newspapers in the United States and Canada, and would do all that it reasonably could to secure to the plaintiff the full benefit received from the agreement. The plaintiff was to pay £150 a week during the continuance of the agreement.

The plaintiff duly gave notice of copyright in each of its issues, and specially on the articles received by cable from the Times, completing its copyright by depositing two copies at Washington in accordance with the statute.

The bill also set up the copyright law of Great Britain, and then alleged that on January 31, 1920, the Times published, and so secured a copyright in, a letter written by Viscount Grey upon the attitude of the United States Senate towards the League of Nations. This letter had been written for the Times after conference between Lord Grey and its editors, and was of great public interest and importance. Owing to the manner of its preparation and joint composition, the Times got title to the copyright in Great Britain. By the contract the plaintiff became "the assignee or partial assignee" of the rights in said letter enjoyed by the Times, and so vested with exclusive right at common law to secure copyright thereon in the United States.

Before its publication in the Times it submitted the letter to the plaintiff, which by cable transmitted it to Philadelphia, where it was received on January 31st. In spite of the exercise of due diligence, and owing to the crowded condition of the cables, it did not arrive in time to be published on the morning of January 31st, but was published and copyrighted in the issue of February 1st, which was, however, actually sold in Philadelphia on the late evening of January 31st.

The defendant on February 1st printed a copy of this letter, which it took from the published copy of the Times in London on the preceding day, and which it falsely stated to have been cabled to it by permission of the Times. The defendant also went through the form of copyrighting the letter in the United States. The bill asked for the usual injunction, delivery of plates and models and accounting for damages and profits, together with general relief.

The second cause of action alleged in substance the same facts, and depended upon them for its charge of unfair trade.

Harold Nathan and Alfred A. Cook, both of New York City, for the motion.

Thomas Raeburn White, of Philadelphia, Pa., and William C. Cannon, of New York City, opposed.

LEARNED HAND, District Judge. [1] Not being an "author," the plaintiff concedes that it must be "proprietor" of the literary property in the letter in order to secure a valid copyright in the United States, and so of course the statute requires. Section 8, Copyright Act (Comp. St. § 9524). The statute of 1909 does not define "proprietor," but under the act of 1831 (4 Stat. 436), where in one part the word "assigns" is used and another the word "proprietor," the two were taken as synonymous. Mifflin v. R. H. White Co., 190 U. S. 260, 262, 23 Sup. Ct. 769, 47 L. Ed. 1040. Under Revised Statutes, § 4952, as amended by 26 St. at L. 1107, it was also assumed that a licensee could not obtain copyright, American Tobacco Co. v. Werckmeister, 207 U. S. 284, 296, 28 Sup. Ct. 72, 52 L. Ed. 208, 12 Ann. Cas. 595, but that there must be a full assignment of the literary property, Saaka v.

Lederer, 174 Fed. 135, 98 C. C. A. 571 (C. C. A. 3d); Belford v. Scribner, 144 U. S. 488, 12 Sup. Ct. 734, 36 L. Ed. 514, has nothing to the contrary; Fraser v. Yack, 116 Fed. 285, 53 C. C. A. 563 (C. C. A. 7th), was a distinct holding under the earlier law that a contract very similar to this, being only for a license, would not support a copyright. Under the present act Judge Mayer has said that there must be a full transfer of rights to make one a "proprietor," New Fiction Pub. Co. v. Star Co. (D. C.) 220 Fed. 994; and in Fitch v. Young (D. C.) 230 Fed. 743, affirmed 239 Fed. 1021, 152 C. C. A. 664, I ruled that there must be a statutory division of the various rights before they can be separately assigned.

[2] I think that the word "proprietor" of the present act must be treated as having the same meaning as in the old and as equivalent to "assign." If so, it follows that the author's rights may not be divided except as the statute recognizes a division, and that, if he retains a part of what goes to make up any of the recognized divisions, his assignee is not a "proprietor." In the case at bar, whatever else the parties would have done, had they been faced with this situation, they clearly did not mean to convey any literary property in the "proofs." The contract only gave the plaintiff the right to examine such "proofs" and make copies of them. It is true that it authorized the plaintiff to sell its "news" to other papers in the United States and Canada, but that I take it is no more than the right to allow them in turn to copy as the Times was to allow it. It is on this that the plaintiff chiefly relies. The parties were, however, thinking only of matter which presumably had a temporary interest to the plaintiff, and in which priority of publication was everything. The plaintiff would have that priority if the Times kept its bargain of dealing only with it, and it needed no other protection. It is argued that this is not true, because any enterprising newspaper might do just what the defendant did, owing to the difference of time between London and the United States. But I think it clear that the parties had no such possibility in mind as that. If they had, it was very strange that they should not have provided against it perhaps by the very assignment of the literary property.

However that may be, the plaintiff's right to resell the "news" is amply accounted for by the power given it under the contract to give precedence in time to such papers as it chose, a precedence which in most cases would be ample, and, indeed, in all cases, if the plaintiff is right in its position in the second cause of action. Such precedence would protect it and its customers unless against a paper enterprising enough to cable over news copied from the published edition of the Times in time to set it upon the same morning as it appeared in the plaintiff's columns. It is not even alleged that in the case at bar the defendant could under normal conditions have got out Lord Grey's letter on January 31st. Perhaps it could, but the bill does not say so.

Yet, even if the fact be so, and if the protection was not absolute, when the cables were free, still an assignment cannot be built on so uncertain a foundation. If it can, and was so intended, the Times lost its own right to publish its news here without the plaintiff's assent. A

weekly edition of the paper circulates in this country, and if it meant to subject that circulation to the plaintiff's pleasure, I think there ought to be some express indication of such a purpose. The plaintiff's right to sell the "news" elsewhere is not enough.

Moreover, if the contract was an assignment it was unnecessary for the Times to agree not to give the same rights to others. I know that the plaintiff argues that it is from this feature along with the other features of the contract that the assignment is to be inferred, but I answer that if people mean to make an assignment, they do not usually go about it in that way. What they appear to have been doing here is only to give the plaintiff the first look at the Times' "proofs," and not to give it to any one else. That is an understandable agreement without ambiguity, but it stops there. The plaintiff must go further and read into it a purpose undisclosed and even disguised, which the parties had no possible reason for leaving to conjecture, if they had really had it.

Finally, something is made of the phrase by which the Times agrees to do everything else necessary to protect the plaintiff. What, it is asked, can be the purpose of this if only a license was intended? It might retort, What was its purpose if an assignment was intended? So far as appears, the plaintiff was in either case protected by what it got in the contract. If it became a "proprietor," the Times could do nothing to help it get its copyright. Such clauses are common enough, and mean nothing more than a vague obligation to do whatever else may come up that will secure to the other party the fruits of its bargain. In the case at bar perhaps the clause would cover such steps as the Times could consistently take to prevent the defendant and other American papers from getting early copies of its own issues, or by way of giving the plaintiff assistance in the despatch of mail or the use of the cables. Out of such general provisions nothing definite can be raised. It would indeed be a perverse interpretation which read into it any intention to include an assignment which could have been so easily expressed otherwise. I conclude, therefore, that the plaintiff was not the "proprietor" of the letter, and that the first cause of action must fail.

[3] The second is thought to involve a question of the extent of the doctrine of International News Service v. Associated Press, 248 U. S. 215, 39 Sup. Ct. 68, 63 L. Ed. 318, but I think it does not. The bill alleges that the defendant published the letter with a statement that it had been cabled to it with the permission of the Times, and that this was false. It further alleges that the defendant well knew of the plaintiff's contract, and had often come into conflict with the plaintiff about their relative rights, because of it. If proved, the false statement would be a clear case of unfair competition. In saying that it had the permission of the Times, the defendant informed its readers that at least in this instance the plaintiff was not the sole purveyor of the Times' news. As the plaintiff's right to resell the news was dependent in large measure upon the exclusiveness of its relations with the Times, this might, and probably would, be highly injurious to its

business as a news seller. Furthermore, the plaintiff was entitled, and indeed obliged, under the contract to advertise its articles as under the "London Times News Service." Its readers would naturally attribute less value to that service if they learned that it was shared with the defendant. These consequences are real injuries, and, if they result from false statements by the defendant, they are actionable.

Thus the second cause of action is good to some extent, and a motion to dismiss will not lie. Whether the relief should go beyond the false statement I need not now discuss. There must, in any event, be a trial, and the extent of the remedy can probably be better measured after the proofs are in than from the mere allegations of the bill. It may well be that to the degree of the "time differential" news collectors have a kind of property in what they collect for publication. Contemporaneous history may be property in the hands of such collectors for so long as the sun takes to travel from place to place, and, if there be a hitch in the cables, possibly for even longer. But with all that I shall not deal now; it is enough that the plaintiff is entitled to some relief.

The allegation of the jurisdictional amount is sufficient on such a motion as this. Blackburn v. Portland Gold Mining Co., 175 U. S. 571, 575, 20 Sup. Ct. 222, 44 L. Ed. 276.

Motion granted as to the first cause of action; denied as to the second. Defendant to answer in 20 days after order filed.