Jerome **SIEGEL** and Joseph **Shuster,** Plaintiffs-Appellants,

v.

**NATIONAL PERIODICAL PUBLICATIONS, INC., et al., Defendants-Appellees.**

No. 36, Docket 73–2844.

United States Court of Appeals, Second Circuit.

Argued Nov. 7, 1974.

Decided Dec. 5, 1974.

Gordon T. King, New York City (Coudert Brothers, New York City, Carleton G. Eldridge, Jr., New York City, of counsel), for plaintiffs-appellants.

Michael D. Hess, New York City (Weil, Gotshal & Manges, New York City, Edward C. Wallace, Heather G. Florence, New York City, of counsel), for defendants-appellees.

Philip B. Wattenberg, New York City, for Amicus Curiae Music Publishers' Association of the United States, Inc.

Irwin Karp, New York City, for Amicus Curiae Authors League of America, Inc.

Before KAUFMAN, Chief Judge, and ANDERSON and MULLIGAN, Circuit Judges.

MULLIGAN, Circuit Judge:

This is an appeal from the granting of summary judgment dismissing the complaint upon the order of the Hon. Morris E. Lasker, filed on October 18, 1973. While the opinion below, 364 F.Supp. 1032 (S.D.N.Y.1973), sets forth the facts

in detail, it will be necessary to repeat some of the more salient factual background.

## I

The issue presented is who has the copyright renewal rights in the famous "Superman" cartoon character. In 1933, plaintiff Jerome Siegel conceived the idea of Superman—a person of unprecedented physical prowess dedicated to acts of derring-do in the public interest. In the same year, together with plaintiff Joseph Shuster, he created a Superman comic strip which consisted of several weeks' worth of material, some of which was completely "inked in" and ready for publication, and some of which consisted of mere black-and-white pencil drawings. The new strip was not published at this time, although plaintiffs continued to collaborate on other strips that were then in publication.

One of plaintiffs' customers for these other strips was Detective Comics, Inc. (Detective), the predecessor in interest of the present defendant National Periodical Publications, Inc. (National). On December 4, 1937 Detective entered into a written employment contract with plaintiffs, whereby the latter would furnish two other strips exclusively to Detective for a period of two years. The plaintiffs further agreed "that all of these products and work done by said Employee [plaintiffs] for said Employer [Detective] during said period of employment, shall be and become the sole and exclusive property of the Employer, and the Employer shall be deemed the sole creator thereof, the Employee acting entirely as the Employer's employee." The agreement also gave Detective the right of first refusal for any new strips the plaintiffs might produce.

In 1938, for the first time, plaintiffs submitted their 1933 Superman materials to Detective to be considered for use in a new magazine, Action Comics. Detective asked plaintiffs to revise and expand the materials into a full-length production suitable for magazine publication, and this was done.

Thereafter, and prior to the first appearance of Superman in Action Comics, Detective prepared a written release, dated 1 March 1938, which was executed by plaintiffs and accepted by Detective. This release sold and transferred to Detective "such work and strip [Superman], all good will attached thereto and exclusive rights to the use of the characters and story, continuity and title of strip contained therein, to you [Detective] and your assigns to have and hold forever and to be your exclusive property. . . . The intent hereof is to give you exclusive right to use and acknowledge that you own said characters or story and the use thereof exclusively . . . ."

On 19 December 1939, a supplemental employment agreement was entered into. It raised plaintiffs' compensation for the increasingly popular Superman strip, and in addition contained the following language:

That we, Detective Comics, Inc., are the sole and exclusive owners of the comic strip entitled "Superman" . . . and to [sic] all rights of reproduction of all said comic strips and the titles and characters contained therein, and the continuity thereof, including but not limited to the fields of magazine or other book publication, newspaper syndication . . . and all other form of reproduction. We have all right of copyright and all rights to secure copyright registration in respect of all such forms of reproduction.

. . .

No further written agreements between the parties were ever executed, although plaintiffs were paid compensation at ever-increasing rates. By 1947, plaintiffs' total compensation for the strip exceeded $400,000.

In that year plaintiffs instituted an action against defendant National in the New York State Supreme Court, Westchester County, to annul the contracts between the parties for various reasons. The March 1938 agreement was specifically attacked as void for lack of mutuality and consideration. In addition, plain-

tiffs asked for a declaration of the rights of the parties in the Superman character.

Referee J. Addison Young, in an opinion dated 21 November 1947, concluded that the March 1938 agreement was valid and that it transferred to Detective "*all* of plaintiffs' rights to Superman" (emphasis added). Shortly thereafter, on 12 April 1948, the referee signed findings of fact and conclusions of law. The first such conclusion stated:

> 1. By virtue of the instrument of March 1, 1938, plaintiffs transferred to Detective Comics, Inc. all of their rights in and to the comic strip Superman including the title, names, characters and concept . . . and by virtue of said instrument Detective Comics, Inc. became the absolute owner of the comic strip Superman . . . .

On 19 May 1948 the parties signed a stipulation which called for the payment of certain moneys by National to plaintiffs. In addition the stipulation repeated the above-quoted conclusion of law, and also stated that:

> Defendant National Comics Publications, Inc. is the sole and exclusive owner of and has the sole and exclusive right to the use of the title Superman and to the conception, idea, continuity, pictorial representation and formula of the cartoon feature Superman as heretofore portrayed and published . . . and such sole and exclusive ownership includes, but is not limited to, the fields of book and magazine publications, [etc.] and all other forms of reproduction and presentation, whether now in existence or that may hereafter be created, together with the absolute right to license, sell, transfer or otherwise dispose of said rights.

The final consent judgment filed by the referee on 21 May 1948 incorporated the above stipulation and further

> Declared and Adjudged that by virtue of the instrument of March 1, 1938, plaintiffs validly transferred to Detective Comics, Inc. . . . all of their rights in and to the comic strip Superman . . . and that by virtue of said instrument, said Detective Comics, Inc. became the absolute owner of the comic strip Superman . . . and it is further
>
> Declared and Adjudged that defendant National Comics Publications, Inc. is the sole and exclusive owner of and has the sole and exclusive right to the use of the title . . . and . . cartoon feature Superman . . . and it is further
>
> Ordered and Adjudged that plaintiffs . . . be and they hereby are enjoined and restrained from creating, publishing, selling or distributing . . . any material of the nature heretofore created, produced or published under the title Superman . . ..

Plaintiffs now seek a declaration that they, and not defendant National, own the copyright renewal rights to the Superman strip. National counterclaims for a similar declaration in its favor. It is stipulated that both parties made timely renewal filings with the Register of Copyright.

The court below granted defendants summary judgment dismissing the complaint, primarily for three reasons:

1) The 1947 Westchester action bars relitigation of questions concerning the rights of the parties in Superman, because of res judicata;

2) Superman was a "work for hire" within the meaning of the Copyright Act, 17 U.S.C. § 26 (Supp.1974), and therefore the renewal rights are in the employer;

3) the various agreements between the parties consistently manifested an intention to give to Detective all of plaintiffs' rights in Superman, including the right of renewal of copyright, though it was never mentioned expressly in any of the agreements.

### II

We are persuaded here that the court below properly decided that the state court judgment of May 21st, 1948 effectively estopped the plaintiffs from relitigating the issue of the ownership of

the renewal copyright.[1] In the state action the present plaintiffs sought, *inter alia,* a declaratory judgment with respect to the rights of the parties in Superman. After a trial the official referee rendered an opinion as well as detailed findings of fact and conclusions of law. An interlocutory judgment was entered on April 12, 1948 and notices of appeal were filed by both parties. Settlement negotiations then ensued which resulted in a stipulation of settlement and the entry of a final consent judgment of May 21st, 1948. No appeals were taken, and no question has been raised as to the validity of the judgment. There is no doubt that the judgment of the state court is binding in this subsequent federal action. See Vernitron Corp. v. Benjamin, 440 F.2d 105, 108 (2d Cir.), cert. denied, 402 U.S. 987, 91 S.Ct. 1664, 29 L.Ed.2d 154 (1971).

■ It is equally clear that a consent judgment does have res judicata effect, Stuyvesant Insurance Co. v. Dean Construction Co., 254 F.Supp. 102, 110 (S.D. N.Y.1966), aff'd sub nom. Stuyvesant Ins. Co. v. Kelly, 382 F.2d 991 (2d Cir. 1967); 1B J. Moore, *supra,* ¶ 0.409 [5]; see United States v. Swift & Co., 286 U.S. 106, 115, 52 S.Ct. 460, 76 L.Ed. 999 (1932).

The only issue before us is whether the state judgment actually determined whether the copyright renewal rights to Superman were vested in the defendants here. While it is true that the term "renewal copyright rights" was not mentioned in the state court judgment, we are persuaded that the state court action finally determined that Detective, predecessor in interest to National, owned all rights to Superman without limitation.

■ The injunction in the 1948 decree, which enjoined the plaintiffs from publishing Superman, is not limited to the copyright period or what remained

thereof but is perpetual. The plaintiffs were represented by counsel in the state court and there is no limiting language in the judgment which would support the present contention that renewal rights were preserved. On the contrary, a reading of the judgment and the findings inescapably leads to the conclusion that the decree settled for once and for all that the defendants had all right and title to Superman for all time.

■ Appellants argue that the agreements did not convey the renewal rights because, as a rule, a general transfer of an original copyright without mention of renewal rights does not convey the latter without proof of a contrary intention. Edward B. Marks Music Corp. v. Charles K. Harris Music Publishing Co., 255 F.2d 518, 521 (2d Cir.), cert. denied, 358 U.S. 831, 79 S.Ct. 51, 3 L.Ed.2d 69 (1958). The ready answer to this argument is that the state court action determined that the agreements conveyed *all* of the plaintiffs' rights in Superman to the defendants and not just the original copyright term. Under the doctrine of res judicata we are not free collaterally to re-examine the agreements to determine whether or not the construction placed upon them was warranted. Restatement of Judgments § 48, comment a; 1B Moore, *supra,* ¶ 0.405 [1], at 629.

■ We also should point out that in Venus Music Corp. v. Mills Music, Inc., 261 F.2d 577 (2d Cir. 1958) this court held that general words of assignment can include renewal rights if the parties had so intended. · Accord, cases cited in Annot., 2 A.L.R.3d 1403, 1415–16 (1965). That intent is to be determined by the trier of the facts. Here the March 1938 agreement between the parties did not simply purport to convey a copyright; in fact, the term is not mentioned in that agreement. Rather, the sale of the Superman strip conveyed the "exclusive

1. The parties on this appeal have used the terms "res judicata" and "collateral estoppel" interchangeably. The distinction depends upon whether or not the former judgment was rendered on the same cause of action (res judicata) or on a different cause of action (collateral estoppel). 1B J. Moore, Federal

Practice ¶ 0.441 [2] (2d ed. 1974); Restatement of Judgments § 68, comment a (1942). Since we hold that the state judgment action determined that the defendants owned all of the rights to the Superman strip without reservation, the doctrine of res judicata is properly applicable.

right to the use of the characters and story, continuity and title of [the] strip . . . to you and your assigns *to have and hold forever"* (emphasis added). Moreover, the authors agreed not to "employ said characters or said story . . . or sell any like strip or story . . . *at any time hereafter* to any other person, firm or corporation . . . " (emphasis added).

The state court was called upon to construe these instruments and the determination of that court that the plaintiffs intended to convey all their rights, including implicitly the renewal of the copyright, was, in our view, entirely proper. In any event, that decision is binding on us here.

### III

 The court below held that Superman was also a "work for hire" within the meaning of the Copyright Act, 17 U.S.C. § 26; since this conclusion was based upon the fact findings of the state court, the court below further concluded that res judicata would bar the plaintiffs from relitigating the factual basis of the "work for hire" point. We disagree. While it is evident that the state court concluded as a matter of law that the plaintiffs conveyed all their rights in Superman to the defendants, there was no conclusion of law in the state court that the comic strip was a work for hire so as to create the presumption that the employer was the author. That issue was not litigated at all in the state court. On the contrary, that court's finding of fact no. 8 was that the plaintiffs were "the originators and authors of the cartoon character Superman and of the title Superman and first created cartoon material in which the said character and title first appeared in 1934. . . . " The court below instead relied upon finding of fact no. 22 in which the state court found that the plaintiffs did revise and expand the Superman material at the request of the defendants and that

this revised material constituted the formula for the ensuing series of strips. We do not consider this tantamount to a conclusion that Superman was a work for hire. That doctrine is applicable only when the employee's work is produced at the instance and expense of the employer, Brattleboro Publishing Co. v. Winmill Publishing Corp., 369 F.2d 565, 567 (2d Cir. 1966), or, in other words, when the " 'motivating factor in producing the work was the employer who induced the creation . . .,' " Picture Music, Inc. v. Bourne, Inc., 457 F.2d 1213, 1216 (2d Cir.), cert. denied, 409 U.S. 997, 93 S.Ct. 320, 34 L.Ed.2d 262 (1972). Superman had been spawned by the plaintiffs four years before the relationship between his authors and the defendants existed. We consider Scherr v. Universal Match Corp., 417 F.2d 497 (2d Cir. 1969), cert. denied, 397 U.S. 936, 90 S.Ct. 845, 25 L.Ed.2d 116 (1970), cited below, to be distinguishable. In that case two servicemen had created a small clay model of an infantryman. Their Army superiors directed them thereafter to sculp a statue 25 feet high with a 12 foot figure of a charging infantryman; the court found this larger creation to differ from the model. The copyright was held to be the property of the United States under the work for hire doctrine. In the case before us Superman and his miraculous powers were completely developed long before the employment relationship was instituted. The record indicates that the revisions directed by the defendants were simply to accommodate Superman to a magazine format. We do not consider this sufficient to create the presumption that the strip was a work for hire.

Accordingly, we affirm the dismissal of the complaint, but only on the ground that the 1947 state court action, in interpreting the agreements between the parties, precludes the plaintiffs from contesting ever again that all rights in Superman, including the renewal copyright, have passed forever to defendants.