**INTERNATIONAL FILM EXCHANGE, LTD., et al., Plaintiffs,**

v.

**CORINTH FILMS, INC., et al., Defendants.**

**No. 80 Civ. 6564 (JES).**

United States District Court, S.D. New York.

Nov. 14, 1985.

Shapiro Spiegel Garfunkel Rubin & Driggin, New York City (Nathan Shapiro and Lawrence Florio, of counsel), for plaintiffs.

Coudert Bros., New York City (Michael J. Calvey and R. David Jacobs, of counsel), for defendants.

## OPINION & ORDER

SPRIZZO, District Judge:

Plaintiffs International Film Exchange, Ltd. ("IFEX") and others [1] brought an action seeking damages for copyright in-

---

1. Plaintiff IFEX is a New York corporation engaged, *inter alia,* in the business of exploiting foreign film productions in the United States. Joined as voluntary plaintiffs are Brandon Films, Inc. ("Brandon") and Films Incorporated, both licensees of IFEX. Joined as involuntary plaintiffs are G.F.C. General Film Company, Ltd. ("GFC"), a Liechtenstein corporation, Italfilmexport, S.R.L. ("Italfilm"), an Italian lim-

ited liability company, Michael Arthur Productions ("Arthur"), a Swiss partnership, P.A.T. Produzioni Associata Televisive, S.R.L. ("PAT") and PAT International, S.P.A. ("PAT International"), both Italian business entities. GFC is IFEX's licensor and Italfilm is GFC's predecessor in title. PAT, PAT International, and Arthur were joined, along with Films Incorporated, by plaintiff IFEX in response to a motion, made by

fringement with respect to the foreign film classic, "Ladri Di Biciclette" ("The Bicycle Thief;" hereinafter the "Film"). Defendants Corinth Films, Inc. ("Corinth") and others [2] counterclaimed for infringement, alleging that they, and not plaintiffs, are entitled to the exclusive United States distribution rights to the Film. Both sides have moved for summary judgment, pursuant to Fed.R.Civ.P. 56, to dismiss the respective claims and have raised numerous and complex issues with respect to their alleged copyrights in the Film. Although this action is brought under the Revised Copyright Act of 1976, 17 U.S.C. §§ 101–810 (1982), the operative facts of this action took place while the Copyright Act of 1909, 17 U.S.C. §§ 1–810 (1976 ed.) (superseded 1976), was still effective,[3] and the parties' claims to rights in an original, Italian-language Film must be determined in accordance with that statute.

## BACKGROUND

In 1948, the Film was published in Italy under the name and ownership of Produzioni de Sica ("PDS"), an Italian limited liability company apparently controlled by the Film's director, Vittorio de Sica. In August of 1967, defendant Feiner entered into a contract with PDS for the rights to theatrical, non-theatrical and television exploitation in the United States of an English-language dubbed version of the Film. The contract was to run for a period of ten years. *See* Exhibits Accompanying Plaintiffs' Rule 56(b) Motion to Dismiss Counterclaim ("Plaintiffs' Exhibits"), at A. In 1970, that contract was amended to include the right to distribute an Italian-language version of the Film, with or without subtitles. *See* Plaintiffs' Exhibits, at B. The 1970 contract also extended Feiner's distribution rights through 1992. *See id.* Feiner, in turn, granted exclusive licenses to defendants Corinth (for non-theatrical distribution) and Jacobs (for theatrical distribution). *See* Answer to Amended Complaint and Amended Counterclaim, at ¶¶ 23–24. Subsequently, Corinth assumed Jacobs' license and now claims the exclu-

defendants pursuant to Fed.R.Civ.P. 19. Defendants had contended that they would be exposed to a risk of multiple liability without the joinder of Films Incorporated, PAT, PAT International, and Arthur, and that thus they were indispensable parties within the meaning of Rule 19(a). Since these parties have been joined by plaintiffs, the Court, therefore, denies defendants' Rule 19 motion as moot.

Defendants also object to what they refer to as "the transmutation of GFC and [Italfilm] from voluntary to involuntary plaintiffs without permission from the Court." *See* Defendants' Reply Memo at 4. It seems that in plaintiffs' prior pleading, GFC and Italfilm were not listed as involuntary plaintiffs. *See* Amended Complaint. However, in their second amended complaint, plaintiffs stated that Vittorio Balini, upon whose authority GFC and Italfilm were joined to this action, was, in effect, without such authority. *See* Second Amended Complaint at ¶ 5(c). Therefore, pursuant to Fed.R.Civ.P. 19(a) and the "involuntary plaintiff" doctrine established· by the Supreme Court in *Independent Wireless Telegraph Co. v. Radio Corp. of America,* 269 U.S. 459, 46 S.Ct. 166, 70 L.Ed. 357 (1926), plaintiffs named these entities as involuntary plaintiffs. Defendants allege that plaintiffs violated Fed.R.Civ.P. 15(a) by filing the second amended complaint without obtaining leave of the Court. However, on March 30, 1984, the Court orally granted permission for

plaintiffs to file a second amended complaint, partly as a result of defendants' continued objections that indispensable parties were still missing from this action. Since the Court has now determined that the Film is in the public domain, *see infra,* the propriety of joining the aforesaid parties as involuntary plaintiffs need not be decided.

2. In addition to Corinth, others named as defendants in this action are John Poole and Peter Meyers, President and Vice-President of Corinth, respectively, Arnold Jacobs ("Jacobs"), an individual doing business as A. Jay Film Co., and Richard Feiner and Company, Inc. (Feiner"). All do business in New York.

3. While the 1976 Act generally became effective on January 1, 1978, section 304(b) of the new Act, 17 U.S.C. § 304(b) (1982) (1976 Act), dealing with renewal of copyrights, was made effective upon the date of enactment, October 19, 1976. *See* Pub.L. No. 94–553, § 102, 90 Stat. 2541, 2598–99 (1976). However, section 304(b) only applies to renewal registrations made between December 31, 1976, and December 31, 1977, and merely provides for an extension of the renewal term. *See* 17 U.S.C. § 304(b) (1982) (1976 Act). Here, however, the renewal registration on the Film had to be made prior to December 6, 1976, and therefore the renewal issue is governed by the 1909 Act.

sive distribution rights to the Film in the United States.

In 1974, PDS went bankrupt. Italfilm acquired all "rights of economic utilization" to the Film pursuant to a deed of assignment executed by PDS's liquidator on September 26, 1974. *See* Plaintiffs' Exhibits, at H.[4] However, by the terms of that deed, excepted from the transfer were "rights previously acquired by third parties, provided they are duly approved by the competent Italian authorities with respect to the monetary regulations in force." *See id.*, at H, ¶ 2.[5] Shortly thereafter, Italfilm assigned all rights to the Film to GFC. In October of 1974, plaintiffs GFC and IFEX entered into a series of agreements, the effect of which was to grant IFEX an exclusive license to create and distribute a subtitled version of the Film for a period of twelve years, beginning in 1977. *See* Exhibit E to Defendants' Notice of Motion. In 1977, IFEX, in turn, granted an exclusive ten-year license to the Film to MacMillian Films, Inc. ("MacMillian"). In 1982, soon after MacMillian was acquired by Films Incorporated, MacMillian was renamed Brandon.

**4.** Prior to bankruptcy, PDS changed its name to Produzioni del Secolo. *See* Defendants' Memo at 4 n. 4. Italfilm was the highest bidder in an auction held by an Italian Bankruptcy Court and was awarded the rights to the Film pursuant to a decree from the Bankruptcy Court. *See* Plaintiffs' Exhibits, at H.

**5.** The parties submit that the bankruptcy decree referred to Italian Currency Decree-Law No. 476 of June 6, 1956, Gazetta Ufficiale della Republica Italiana 6 (February 1, 1965), which states that contracts between residents of Italy and foreign parties may not be made without proper authorization by the Italian Ministry of Foreign Trade. *See* Plaintiffs' Exhibits, at J, art. 2.

**6.** These issues are complicated by the fact that the 1967 agreement between PDS and Feiner expressly states that the agreement is made in New York and "shall be governed in accordance with the laws of the State of New York." *See* Plaintiffs' Exhibits, at A, ¶ 12. Unless unreasonable, the parties' choice of law, as expressed in their contract, governs that contract. *See, e.g., CBS, Inc. (CBS Records Division) v. Tucker*, 412 F.Supp. 1222, 1226 n. 5 (S.D.N.Y.1976); *Fleischmann Distilling Corp. v. Distillers Co., Ltd.*, 395 F.Supp. 221, 229 (S.D.N.Y.1975).

## DISCUSSION

Defendants claim that plaintiffs have no valid rights to the Film. They argue that pursuant to the bankruptcy decree, Italfilm took the rights to the Film subject to the preexisting rights of Feiner. Plaintiffs dispute this, arguing that since defendants failed to obtain the Italian Government authorization required by Currency Law No. 476, *see* note 5, *supra*, the grant to Feiner is void and of no effect. *See* Second Amended Complaint, at ¶ 19.[6]

However, since it appears clear that the Film is now in the public domain, and that neither party may properly claim any proprietary rights in the Film, it is not necessary to resolve these issues. It is undisputed that the date of publication of the Film was December 6, 1948. *See* Plaintiffs 3(g) Statement, at ¶ 16.[7] Under the 1909 Act, statutory copyright protection attached and endured for twenty-eight years from the date of first publication with notice. *See* 17 U.S.C. § 24 (1976) (1909 Act) (superseded).[8] Thereafter, an application for renewal of copyright would have had to have

**7.** Under American copyright laws, the fact that the Film was first published in Italy does not diminish its copyrightability here. "For domestic copyright purposes generally there is no significance in where a work is published. If [a] work is published anywhere in the world, it is 'published,' with all of the consequences that flow therefrom." 3 M. Nimmer, *Nimmer on Copyright* § 17.04[D], at 17–17 (1985) (footnote omitted). One such consequence of publication with notice is the termination of protection under common law copyright. *See, e.g., Bobbs-Merrill Co. v. Straus*, 210 U.S. 339, 28 S.Ct. 722, 52 L.Ed. 1086 (1908); *G. Ricordi & Co. v. Haendler*, 194 F.2d 914 (2d Cir.1952).

**8.** Section 24 of the 1909 Act provided:
Sec. 24. Duration; Renewal and Extension
The copyright secured by this title shall endure for twenty-eight years from the date of first publication, whether the copyrighted work bears the author's true name or is published anonymously or under an assumed name: *Provided,* That in the case of any posthumous work or of any periodical, cyclopedic, or other composite work upon which the copyright was originally secured by the proprietor thereof, or of any work copyrighted by a corporate body (otherwise than as assignee

been filed with the Copyright Office within one year prior to the expiration of the original term of copyright in order to extend the copyright protection afforded by the statute. *See Fred Fisher Music Co. v. M. Witmark & Sons,* 318 U.S. 643, 644, 63 S.Ct. 773, 87 L.Ed. 1055 (1943); *Tobani v. Carl Fisher, Inc.,* 98 F.2d 57, 59 (2d Cir.), *cert. denied,* 305 U.S. 650, 59 S.Ct. 243, 83 L.Ed. 420 (1938); *Tobias v. Joy Music, Inc.,* 204 F.Supp. 556, 558 (S.D.N.Y.1962). Thus, the initial term of copyright in the Film expired December 6, 1976, and an application for a valid renewal would have had to have been filed between December 6, 1975 and December 6, 1976.

 It is undisputed that neither of the defendants ever filed for a renewal of copyright for the Film during that period. Plaintiff IFEX applied for and received a renewal certificate from the Copyright Office on November 29, 1976. *See* Exhibit K to Declaration of R. David Jacobs.[9] However, since this renewal application was made in the name of IFEX, it was not effective to validly extend the copyright term. A mere licensee, as opposed to an assignee, cannot validly renew a copyright in its own name. *Bartok v. Boosey & Hawkes, Inc.,* 523 F.2d 941, 948 n. 11 (2d Cir.1975). As a consequence, the Film irrevocably entered the public domain upon the expiration of the initial term of copyright. *See, e.g., Silverman v. Sunrise Pictures Corp.,* 273 F. 909, 912 (2d Cir.1921), *cert. denied,* 262 U.S. 758, 43 S.Ct. 705, 67 L.Ed.

1219 (1923); *Classic Film Museum Inc. v. Warner Bros., Inc.,* 453 F.Supp. 852, 854–55 (D.Me.1978), *aff'd,* 597 F.2d 15 (1st Cir.1979); *see also* 2 M. Nimmer, *supra,* 9.05[B], at 9–57.

 Nor can there be any question that IFEX was at best a licensee. A transfer of anything less than a totality of a work is a license and not an assignment. *See First Financial Marketing Services Group., Inc. v. Field Promotions, Inc.,* 286 F.Supp. 295, 298 (S.D.N.Y.1968); *Key Maps, Inc. v. Pruitt,* 470 F.Supp. 33, 38–39 (S.D.Tex.1978); 3 M. Nimmer, *supra,* § 10.-01[A], at 10–4 to 10–5. IFEX was granted the exclusive distribution rights to the Film for a set term of years (twelve) and for a limited geographical area (United States and Canada). *See* Exhibit E to Defendants' Notice of Motion. Courts have deemed such qualified transfers to be licenses. *See, e.g., Hirshon v. United Artists Corp.,* 243 F.2d 640, 643 (D.C.Cir.1957) (transfer of rights for a three-year term constitutes a license); *First Financial, supra,* 286 F.Supp. at 298 (grant of exclusive rights within a limited territory operates as a license).

 Although the license from GFC to IFEX states that IFEX acquired the "rights of renewal" to the Film, *see* Exhibit 6 to Plaintiffs' Affidavit at ¶ 2, this can only be reasonably interpreted as granting IFEX a right to secure a renewal of copy-

---

or licensee of the individual author) or by an employer for whom such work is made for hire, the proprietor of such copyright shall be entitled to a renewal and extension of the copyright in such work for the further term of twenty-eight years when application for such renewal and extension shall have been made to the copyright office and duly registered therein within one year prior to the expiration of the original term of copyright: *And provided further,* That in the case of any other copyrighted work, including a contribution by an individual author to a periodical or to a cyclopedic or other composite work, the author of such work, if still living, or the widow, widower, or children of the author, if the author be not living, or if such author, widow, widower, or children be not living, then the author's executors, or in the absence of a will,

his next of kin shall be entitled to a renewal and extension of the copyright in such work for a further term of twenty-eight years when application for such renewal and extension shall have been made to the copyright office and duly registered therein within one year prior to the expiration of the original term of copyright: *And provided further,* That in default of the registration of such application for renewal and extension, the copyright in any work shall determine at the expiration of twenty-eight years from first publication. 17 U.S.C. § 24 (1976) (1909 Act) (emphasis in original).

9. The renewal certificate lists IFEX as the "Proprietor of copyright in a work made for hire," and designates PDS as the author of the Film. *See* Exhibit K to Declaration of R. David Jacobs.

right in the name of the author.[10] *See, e.g., Rossiter v. Vogel,* 134 F.2d 908, 911 (2d Cir.1943); *Rose v. Bourne, supra* note 10, 176 F.Supp. at 610. Indeed, section 24 of the 1909 Act explicitly states that, except in certain limited circumstances, not applicable here, a copyright may only be validly renewed in the name of the author. *See* 17 U.S.C. § 24 (1976) (1909 Act), *supra* note 8; *Tobias, supra,* 204 F.Supp. at 559.[11]

 The only other issue arguably raised by the motions is whether any party has any valid derivative-work copyright interest in either a dubbed or subtitled version of the Film. Under the 1976 Act, derivative works are independently copyrightable. *See* 17 U.S.C. § 103 (1982) (1976 Act). A derivative work can be a translation of a pre-existing work. *See* 17 U.S.C. § 101 (1982) (1976 Act); *see also Brecht v.*

*Bentley,* 185 F.Supp. 890 (S.D.N.Y.1960). Therefore, valid copyrights may still exist with respect to any English-language, dubbed, or subtitled versions of the Film, even if, as the Court has found, the underlying Film itself is in the public domain. *See Harry Fox Agency, Inc. v. Mills Music, Inc.,* 543 F.Supp. 844, 849 (S.D.N.Y. 1982), *rev'd on other grounds,* 720 F.2d 733 (2d Cir.1983); *rev'd sub. nom. Mills Music, Inc. v. Snyder,* — U.S. —, 105 S.Ct. 638, 83 L.Ed.2d 556 (1985). *Russ Berrie & Co., Inc. v. Jerry Elsner Co., Inc.,* 482 F.Supp. 980, 985 (S.D.N.Y.1980).[12] However, it is unclear from the papers submitted to this Court to what extent, if any, either party is claiming infringement of either a dubbed or subtitled version of the Film as a derivative work. These issues therefore cannot be resolved by summary judgment.[13]

**10.** Indeed, it would be illogical to construe this license as a grant to IFEX of the renewal expectancy itself (*i.e.,* the 28-year term), *see Fred Fisher, supra,* 318 U.S. at 645, 63 S.Ct. at 773, as this would plainly contradict the terms of the license, which clearly state that the license was for a term of 12 years. *See* Exhibit 6 to the Plaintiff's Affidavit, at ¶ 6. Thus, in this case, it is important to distinguish between a right of renewal and a right to secure a renewal. *Compare Rose v. Bourne,* 176 F.Supp. 605, 609 (S.D. N.Y.1959), *aff'd,* 279 F.2d 79 (2d Cir.), *cert. denied,* 364 U.S. 880, 81 S.Ct. 170, 5 L.Ed.2d 103 (1960).

**11.** One such circumstance occurs when the renewal claimant is the current proprietor of a work copyrighted by an employer for whom such work was made for hire. *See* 17 U.S.C. § 24 (1976) (1909 Act), *supra* note 8. In this situation, the current proprietor of the work may apply for a renewal in its own name. *See Shapiro, Bernstein & Co., Inc. v. Bryan,* 36 F.Supp. 544, 545 (S.D.N.Y.1940), *aff'd,* 123 F.2d 697 (2d Cir.1941). Although, IFEX did, in fact, place this designation under its name on the renewal application, *see* Exhibit K to Declaration of R. David Jacobs, it is clear that IFEX had no right to claim that status. Plaintiff has not even alleged that the Film was indeed a work made for hire within the meaning of the 1909 Act. *See Siegel v. National Periodical Publications, Inc.,* 508 F.2d 909, 914 (2d Cir.1974). Moreover, the original registration of the Film shows PDS as the author and not as an employer for whom a work was made for hire, *see* Exhibit J to Declaration of R. David Jacobs, and there is no evidence indicating the existence of any employer-employee relation-

ship at the time of the Film's creation from which IFEX's renewal status could derive. *See Epoch Producing Corp. v. Killiam Shows, Inc.,* 522 F.2d 737, 743–45 (2d Cir.1975). Most importantly, under section 24 of the 1909 Act, only a current *proprietor* can claim a renewal in a work made for hire. Under no possible construction of the facts alleged can IFEX, a mere licensee, be regarded as a current proprietor of the copyright. *See Public Ledger v. New York Times,* 275 F. 562 (S.D.N.Y.1921), *aff'd,* 279 F. 747 (2d Cir.), *cert. denied,* 258 U.S. 627, 42 S.Ct. 383, 66 L.Ed. 798 (1922); *see also Egner v. E.C. Schirmer Music Co.,* 139 F.2d 398, 399 (1st Cir. 1943), *cert. denied,* 322 U.S. 730, 64 S.Ct. 947, 88 L.Ed. 1565 (1944); *Van Cleef & Arpels, Inc. v. Schechter,* 308 F.Supp. 674, 677 (S.D.N.Y.1969); *cf. Geisel v. Poynter Products Inc.,* 295 F.Supp. 331, 337 (S.D.N.Y.1968).

**12.** The 1976 Act affords no copyright protection to works that have entered the public domain prior to January 1, 1978. *See* Pub.L. No. 94–553, § 103, 90 Stat. 2541, 2599 (1976). As this opinion makes clear, the Film entered the public domain on December 6, 1976, when the initial term of copyright expired.

**13.** It is clear that the affidavits as presently filed by the parties do not support such a claim. Although defendants have claimed that the plaintiffs have been marketing an English-language dubbed version of the Film, thereby infringing their copyright, *see* Defendants' Reply Memo at 15, they have done so only in their brief, not in their counterclaim or affidavits. Similarly absent is an allegation that plaintiffs' dubbed version was copied from defendants'

## CONCLUSION

All claims of copyright infringement based on the original Italian-language version of the Film are dismissed. Summary judgment, however, is denied with respect to any claims of infringement concerning derivative versions of the original Italian-language version of the Film made by the parties, if, indeed, such claims are being asserted.[14]

IT IS SO ORDERED.

derivative work, and thus is not an independent translation of the original work. *See* 1 M. Nimmer, *supra*, § 3.04, at 3–16 (copyright in a derivative work merely protects against copying the original material added in the derivative work). Indeed, there has been no showing that a dubbed version of the Film even exists. Plaintiffs dispute the existence of a dubbed version of the Film, contending that they only distribute an English-subtitled version. *See* Plaintiffs' Reply Memo at 8–9.

Moreover, the catalogue advertising the Film submitted to the Court as an exhibit indicates only a subtitled version of the Film. *See* Exhibit M to Defendants' Notice of Motion. No evidence of a dubbed, English-language version of the film has ever been presented to this Court. In view of the rather uncertain posture of these claims, they cannot be properly disposed of by summary judgment on the papers presently submitted to the Court.

14. By written Order, dated June 21, 1985 and filed on June 26, 1985, the Court "determined that there exist triable issues of fact with respect to the parties' competing claims ... with respect to certain derivative works," and directed the parties to file a Pre-Trial Order on or before July 29, 1985, and to be prepared to proceed to trial of the derivative-work claims on August 1, 1985. Upon counsel's representations that the parties had settled any remaining disputes, the Court filed an Order of Discontinuance on July 29, 1985, with leave for either party to restore the case to the active trial calendar within ninety days. By Order dated October 28 and filed October 30, 1985, the Court directed "that upon the subjoined consent of the attorneys [dated October 22, 1985] ... the requirements of the parties to file a Stipulation of Discontinuance and exchange releases is hereby extended to December 23, 1985."