Mary W. CHEEVER, Susan Cheever, Benjamin Hale Cheever, and Federico Cheever, Plaintiffs,

v.

ACADEMY CHICAGO LTD. d/b/a Academy Chicago Publishers, Defendant.

No. 88 Civ. 3404 (GLG).

United States District Court, S.D. New York.

June 9, 1988.

Frankfurt, Garbus, Klein & Selz, P.C., New York City (Martin Garbus, Maura J. Wogan, of counsel), for plaintiffs.

Kronish, Lieb, Weiner & Hellman, New York City (Adam Walinsky, Tab K. Rosenfeld, of counsel), for defendant.

## OPINION

GOETTEL, District Judge:

The late John Cheever is an author of some note, with his published novels and short stories continuing to enjoy a measure of success. His short stories were, by and large, published in magazines, although a volume of his short stories previously was published as part of a collection under the title *Collected Stories*.

In the summer of 1987, Cheever's widow and an editor named Franklin Dennis discussed with Academy Chicago Publishers the possibility of publishing a volume of the uncollected stories of John Cheever. Dennis advised Mrs. Cheever of the following by letter dated July 10, 1987:

> Academy Chicago looks forward to disucssing [sic] with you and the other family members such questions as locating the stories, deciding on those appropriate for publication, resolving copyright questions, the introduction and the foreword.

> The publishers underscore their concern with producing a volume—or even volumes—which meet your collective approval. I mean, in particular, matters of format and design. Academy Chicago, of course, will take on all editorial, copyright and production work.

The interested parties were apparently aware that Mrs. Cheever owned the copyrights to only certain of the uncollected stories, that the magazine publishers (and perhaps others) owned some of them, and that certain of them had gone into the public domain.

Dennis further advised Mrs. Cheever that Academy Chicago could not afford a

large advance. They would, however, "pay full royalties on all stories in the volume(s) irrespective of their copyright status."

Dennis apparently negotiated directly with Academy Chicago Publishers on behalf of Mrs. Cheever and himself. Pursuant to those negotiations, he mailed a contract to Mrs. Cheever at her Ossining home, noting:

> Academy Chicago obviously views the particulars of the contract as appropriate. But you should understand that the document is intended primarily to get things underway, and that Academy Chicago expects to discuss the terms in detail.

The contract, dated August 15, 1987 and entitled "PUBLISHING AGREEMENT," was (as is so often unfortunately the case with literary matters) a form uniquely unsuited to the endeavor under discussion. It initially refers to Mary W. Cheever and Dennis as the authors. Mrs. Cheever struck out that description on the signature line when signing and Dennis struck out the designation of "co-author," inking in "editor." The form publishing agreement was one intended with respect to a new work. A number of paragraphs, therefore, had to be eliminated and many inked-in changes were made. As pertinent to the issues before this court, the agreement states:

1. The Author grants to the Publisher, during the full term of copyright of the Work and all renewals and extensions of copyright, the exclusive right to print, publish, and sell the Work in book form in the English language throughout the world, and the exclusive right to license its publication in all languages throughout the world.

2. The Author will deliver to the Publisher on a mutually agreeable date one copy of the manuscript of the Work as finally arranged by the Editor and satisfactory to the Publisher in form and content.

[Paragraphs 3 and 4 have been inked-out.]

5. Within a reasonable time* after delivery of the final revised manuscript, the Publisher may publish the Work at its own expense, in such style and manner and at such price as it deems best, and will keep the Work in print as long as it deems it expedient; but it will not be responsible for delays caused by circumstances beyond its control.

* and a mutually agreeable date

6. The Publisher will apply for copyright in the United States of the Work in conformity with the Copyright Law of the United States and the Universal Copyright convention in the name of Mary W. Cheever and may effect any renewals or extensions of copyright provided for by law.

\*   \*   \*   \*   \*   \*

12. The Author warrants that he or she has full power to make this agreement; that the Work has not been previously published in book form; that all rights conveyed to the Publisher hereunder are free of encumbrances; that the Work does not violate any copyright or any other right and contains nothing libelous, obscene, or otherwise unlawful.

\*   \*   \*   \*   \*   \*

25. In order to expedite payment of royalties and advance, the Publisher will divide royalties and advance due equally between Mary W. Cheever and Franklin Dennis, providing each with accompanying documentation. Each will be paid 50% of all monies due on dates noted in paragraph 11 of this Agreement.

With respect to the financial arrangement with the "Author" (in reality, the author's widow and an editor), the agreement called for the usual royalties in addition to the small advance referred to in paragraph 25.

Disputes arose among the parties. Academy Chicago Publishers (which is apparently the trade style of the actual corporate entity, Academy Chicago Ltd.) brought suit against Mrs. Cheever in Chicago, Illinois. This was appropriate since paragraph 20 of the publishing agreement provided that any suit arising out of or relating to the agreement would be filed only in Chicago.

Mary Cheever and the three Cheever children then commenced this suit. Immediately after initiating this action, plaintiffs moved that the court establish an expedited discovery schedule with an eye toward seeking a preliminary injunction enjoining defendant from publishing the book in question. In response, defendant moved to dismiss this action pursuant to Fed.R.Civ.P. 12. Before us, then, are defendant's motion to dismiss and plaintiffs' motion for expedited discovery.

Plaintiffs initially sued not only Academy Chicago but also the editor, Dennis, and a company controlled by him, and the action included claims arising from the publishing agreement. The Academy Chicago defendant moved to dismiss because of the claimed absence of federal jurisdiction and because of the forum-selection clause in the publishing agreement. In an amended complaint, however, Dennis and his company were dropped as were the contract claims arising from the agreement.

In the amended complaint there are six causes of action. Federal jurisdiction derives from claims founded upon the Copyright Act of 1976, 17 U.S.C. § 101 et seq., the Lanham Act, 15 U.S.C. § 1051 et seq., and diversity of citizenship. The first claim is exclusively for copyright infringement. Mrs. Cheever claims to own the copyright of 35 stories and that she and her children own the copyright of three additional stories. It is alleged that Academy Chicago's proposed publication violates those copyrights. The second claim is that two stories which are proposed for publication in the "uncollected stories" were, in fact, earlier published as part of the collected stories. The third claim is that two of the works proposed for publication as to which Mrs. Cheever holds copyrights, as well as perhaps certain of the others in which she claims no copyright interests, are not stories at all but merely sketches. The fourth claim is in the alternative, in the event that the court determines that the defendant has acquired a license because of the publishing agreement. The plaintiffs argue that, to the extent Mrs. Cheever is an "author," she never designated which writings should be contained in the work or delivered any manuscript to the defendant. Consequently, the proposed publication is an unauthorized manuscript. The fifth claim is that the proposed publication violates the Lanham Act by virtue of false designations of origin, description, and representations in that the works selected are not, as implied, those authorized or approved by Mrs. Cheever. Further, plaintiffs contend that by using sketches and two previously collected stories the publishers are deceiving the public. The sixth claim is that, in any event, the children did not assign their interest in the copyrights to three stories (which they hold jointly with their mother), rendering unlawful defendant's contention that it has the exclusive right to print, publish, and sell these works. The children ask for a declaratory judgment as to their rights in those works.

■ The critical issue between the parties is whether Mrs. Cheever intended, in the publishing agreement, to convey her copyrights in the uncollected stories of John Cheever. Defendant argues that by agreeing to a tentative title of *The Uncollected Stories of John Cheever*, Mrs. Cheever agreed to assign all copyrights which she owned. The plaintiffs respond that a tentative title in a publishing agreement does not define the contents of a book, much less the scope of a copyright license, and that they can establish this through proof concerning the customs of the trade. That is an issue which cannot be resolved on a motion to dismiss. It is apparent, however, that the exact works to be included had not been decided upon at the time the publishing agreement was signed and that, considering the nature of the proposed collection, the terms of the publishing agreement are far from specific. Moreover, with respect to the three stories as to which the children are joint holders of the copyright, the issue becomes even more complex.[1] The defendant takes the posi-

---

**1.** John Cheever died in 1982. Under the Copyright Act, an author and his heirs had an inalienable right after specified terms of years to terminate any and all prior copyright grants. Upon such termination, the copyrights revert to the author, if he is alive, or to his heirs, which,

tion that it can obtain publishing rights from a person who holds interest jointly with others. We do not attempt to resolve that issue at this time, but we would think that for such to be the case there would have to be a specific assignment of copyright rather than the general undertaking of this publishing agreement.

 Defendant's strongest argument on this motion is the forum-selection clause in the publishing agreement. To the extent that Mrs. Cheever is attempting to assert contractual rights arising from that agreement the suit clearly belongs in Chicago. However, she has abandoned such claims in her amended complaint. The claims which are put forth by the plaintiffs in the amended complaint are not a part of the publishing agreement, and, indeed, attempt to reject it as a source of any license with respect to their copyrights. Although we cannot predict at this moment whether the plaintiffs will succeed in that endeavor, they are not prevented by virtue of the forum-selection clause from asserting those claims here.[2]

This leaves only the issue of the plaintiffs' application for expedited discovery. The defendant does not oppose expedited discovery, but states that it should occur in connection with their action pending in Chicago. We see no reason why expedited discovery cannot go forward in both actions. Most of Mrs. Cheever's activities apparently occurred in New York. The plaintiffs allege that the infringement and false representations by the defendant have occurred in New York. Mr. Dennis, who was apparently the go-between with respect to these parties, dealt with Mrs. Cheever primarily in New York and with the defendant primarily in Chicago. The

application for expedited discovery in this action, therefore, is granted. (We gather from a recent letter that the parties have reached agreement in this regard.)

SO ORDERED.

in this instance, would have been his surviving widow and his children *per stirpes*. (For some reason, defendant's counsel uses the phrase *"per stripes"* not once but four times in their appendix to their memorandum in support of the motion to dismiss.) This means the children could have acquired rights only within a limited time frame which, the defendant argues, will not occur for many years as to the three stories on which they are claiming such rights. Since this is a motion to dismiss, we do not determine that issue either and must accept their well-

pleaded claim to be joint copyright owners with their mother.

2. The plaintiffs also argue that the forum-selection clause relates only to contract claims and not to tort claims. We do not see much substance to that argument. If the tort claims arise out of, or because of, the publishing agreement, the forum-selection clause would seem to control torts related to the agreement, as well as contract claims.