**CORCOVADO MUSIC CORP.,**
**Plaintiff–Appellant,**

v.

**HOLLIS MUSIC, INC., Bendig Music Corp., Songways Service, Inc.,**
**Defendants–Appellees.**

**No. 75, Docket 92–7399.**

United States Court of Appeals,
Second Circuit.

Argued Sept. 3, 1992.

Decided Jan. 5, 1993.

---

Stuart Prager, New York City (Abeles Clark and Osterberg, of counsel), for defendants-appellees.

Howard Gotbetter, New York City, for plaintiff-appellant.

Before: FEINBERG, NEWMAN and CARDAMONE, Circuit Judges.

FEINBERG, Circuit Judge:

Plaintiff Corcovado Music Corp. (Corcovado) appeals from a judgment of the United States District Court for the Southern District of New York, Kevin T. Duffy, J., dismissing an action for copyright infringement on the condition that defendants submit to the jurisdiction of the Brazilian courts. For the reasons stated below, we reverse the judgment of the district court and remand.

## I. Facts and Proceedings Below

In 1958 and 1960, the composer Antonio Carlos Jobim entered into a series of contracts with a Brazilian publisher, Editora Musical Arapua (Arapua), pursuant to which Arapua and its designee obtained United States copyrights for five songs

(the Five Songs)[1] composed by Jobim. Soon thereafter, Arapua assigned its copyrights in the Five Songs to Bendig Music Corp. (Bendig). Bendig in turn assigned the rights in one of the songs, the *bossa nova* classic "Desafinado," to Hollis Music, Inc. (Hollis). Songways Service, Inc. (Songways), an affiliate of Hollis, administers the rights in "Desafinado." Bendig, Hollis and Songways are all defendants in this action.

Jobim, apparently believing that he retained United States copyright renewal rights for the Five Songs, assigned those rights in 1987 and 1988 to plaintiff Corcovado. Corcovado's complaint alleges that after the expiration of the original term copyrights, defendants Bendig, Hollis, and Songways continued to receive payments in connection with the Five Songs notwithstanding Jobim's assignment of the renewal rights to Corcovado. Accordingly, the complaint alleges that defendants[2] are infringing the renewal copyrights and seeks relief under the Copyright Act, 17 U.S.C. § 101 et seq.

Defendants moved to dismiss the complaint on the ground that the 1958 and 1960 contracts in which Jobim had conveyed copyrights to Arapua—negotiated and executed in Brazil and written in Portuguese—required interpretation by a Brazilian court. Defendants claimed that these contracts, which unquestionably conveyed original term copyrights, also conveyed renewal rights. They argued further that Corcovado, as Jobim's contractual successor, was bound by the forum selection clause in the Jobim–Arapua contracts. This clause, defendants contend, required the parties, i.e., Jobim and Arapua, to resolve any disputes in the courts of Brazil.

Corcovado responded that it was suing to vindicate its rights under the Copyright Act, not as Jobim's successor under the Jobim–Arapua contracts. Therefore, the Jobim–Arapua contracts and the forum selection clause contained therein were relevant to the cause of action, if at all, only as a defense.

The district court agreed with defendants and granted the motion to dismiss with the following handwritten memorandum endorsement:

> This case is by the initial agreement of the parties [i.e., Jobim and Arapua] to be resolved in the courts of Brazil. It involves citizens of Brazil and the interpretation of a Brazil contract and Brazil law. It is dismissed on condition that defendants submit to the jurisdiction of the Brazilian courts.

This appeal followed.

## II. Discussion

### A. *Effect of forum selection clause*

Corcovado argues to us that the district court erred, pointing out that Corcovado and defendants, the parties to this action, never had any agreement with each other, that none of the parties to this action is a citizen of Brazil (indeed, all—including Fox and BMI—are New York corporations doing business in New York) and that United States copyright law, not the law of Brazil, is involved. What is fundamentally at stake, Corcovado argues, is the vindication of rights under the Copyright Act, not the interpretation of a contract.

■ This is a copyright action. An action is a copyright action if it "arises under" the Copyright Act.[3] In a classic deci-

---

1. The songs are "Desafinado," "Eu sei que vou te amar," "Modinha," "Janelas abertas" and "Mulher, sempre mulher."

2. In addition to Bendig, Hollis and Songways, Corcovado also named The Harry Fox Agency (Fox) and Broadcast Music, Inc. (BMI) as defendants. The latter are licensing and collection organizations in the music industry. They have collected money in connection with performances of the Five Songs and are thus stakeholders in this action. After the complaint was filed, all parties to the action entered into a dismissal stipulation, subsequently signed into an order by the district judge, which dismissed the action against Fox and BMI *on condition that they hold money earned from the Five Songs in escrow to be paid out pursuant to* order of the court.

3. Further, it is no less a copyright action if it is brought by an assignee. Under the 1909 Act and the current Act, an assignee has standing to sue for infringement. See 3 Melville B. Nimmer & David Nimmer, Nimmer on Copyright

sion on the scope of federal jurisdiction under the 1909 Act, Judge Friendly set forth, in an explicitly tentative formulation that has nevertheless become authoritative, the circumstances under which an action "arises under" the Copyright Act:

> Mindful of the hazards of formulation in this treacherous area, we think that an action "arises under" the Copyright Act if and only if the complaint is for a remedy expressly granted by the Act, e.g., a suit for infringement or for the statutory royalties for record reproduction, ... or asserts a claim requiring construction of the Act ... or, at the very least and perhaps more doubtfully, presents a case where a distinctive policy of the Act requires that federal principles control the disposition of the claim.

*T.B. Harms Co. v. Eliscu,* 339 F.2d 823, 828 (2d Cir.1964), cert. denied, 381 U.S. 915, 85 S.Ct. 1534, 14 L.Ed.2d 435 (1965). The present case falls squarely within Judge Friendly's first category: "[T]he complaint is for a remedy expressly granted by the Act, e.g., a suit for infringement." This fact makes it a "prototypical" copyright action. See 3 Nimmer on Copyright § 12.-01[A] at 12–5.[4] The Jobim–Arapua contracts are relevant only as a defense. The complaint asserts no rights whatsoever arising out of those contracts, and they form no part of plaintiff Corcovado's case. Plaintiff's position is simply that the defendants infringed its renewal term copyrights.

■ Nevertheless, defendants argue that plaintiff is bound by the forum-selection clause in those contracts. Defendants cite *Warner & Swasey Co. v. Salvagnini Transferica S.p.A.,* 633 F.Supp. 1209 (W.D.N.Y.), aff'd on basis of opinion below, 806 F.2d 1045 (Fed.Cir.1986), in which the court held that a forum-selection clause in a licensing agreement between an Ohio licensee and an Italian licensor applied to an action brought by the licensee against the licensor. *Warner & Swasey* is clearly dis-

tinguishable from the present case because the former concerns an action for breach of contract masquerading as patent infringement, whereas the latter is a bona fide copyright action, as noted above. In *Warner & Swasey,* unlike the present case, the suit was between the same two parties who drafted the forum-selection clause and it centered on the interpretation of the document containing that clause. Consequently, the court held that, "[a]lthough the cause of action pleaded is patent infringement, this action is ultimately based on alleged breach of the licensing agreement by the defendants." *Id.* at 1211.

■ More to the point is *Cheever v. Academy Chicago Ltd.,* 685 F.Supp. 914 (S.D.N.Y.1988), in which the acclaimed author's heirs brought a copyright infringement action against a publishing company. While conceding that the defendant's "strongest argument" on a motion to dismiss was the forum-selection clause in a publishing agreement that designated Chicago as the forum, the court held that the clause did not apply because Mrs. Cheever was not "attempting to assert contractual rights arising from that agreement." *Id.* at 917; see also *Cheever v. Academy Chicago Ltd.,* 690 F.Supp. 281, 285 (S.D.N.Y. 1988) (related case). The *Cheever* case illustrates that where a plaintiff sues for copyright infringement and asserts no rights under a contract with the defendant containing a forum-selection clause, the forum-selection clause has no effect.

It is true, as defendants argue, that plaintiff Corcovado could receive a renewal term copyright from Jobim only if Jobim had something left to give. It can with equal justification be said of anyone who acquires *anything* by contract that he or she acquired it only if the seller had something left to give. That, and the fact that the defendants have a separate contract with the seller (Jobim) containing a forum-selection clause, do not, without more, enti-

---

§ 10.01[C] at 10–12 and § 10.02[A] at 10–20 (1992).

**4.** This case may well be a copyright action for the further reason that it involves "a distinctive

policy of the Act," the author's right of renewal. See William F. Patry, Latman's The Copyright Law 94 (6th ed. 1986); 2 Nimmer on Copyright § 9.02 at 9–25 to 9–26.2.

tle defendants to haul plaintiff halfway across the world to enforce its rights.

As an illustration, consider the following. Buyer 1 buys a house and proceeds to move in. Buyer 2 is already there and says: "You can't move in. Seller sold *me* this house a month ago." Buyer 1 replies, "Really? We'd better go to court," to which Buyer 2 answers: "Yes, but in *Brazil*, because when *I* bought the house from Seller, we put in a forum-selection clause. See you in Brazil." In this example, the essence of Buyer 1's claim is: "My deed is valid; you're interfering with my right of ownership." Buyer 2 wants to rewrite Buyer 1's claim as if it were based on a contract between Buyer 2 and Seller. In reality, the Buyer 2–Seller contract, like the contracts between Jobim and Arapua, is at most a defense to Buyer 1's claim of ownership.

Accordingly, we believe that the district court erred in dismissing Corcovado's copyright action with instructions, in effect, to pursue it in Brazil. We would ordinarily, at this point, simply remand the case to the district court for further proceedings, including a determination of the defense offered by defendants that they, rather than plaintiff Corcovado, are the owners of the renewal copyrights in the Five Songs. However, a careful examination of the record and principles of sound judicial administration persuade us that we should determine that issue at this time.

B. *Owner of renewal rights*

■ The ownership right at stake in this action is the author's right of renewal found in § 24 of the 1909 Copyright Act, reenacted in § 304 of the 1976 Act, 17 U.S.C. § 304(a).[5] The purpose of the right

of renewal is to "provide[ ] authors a second opportunity to obtain remuneration for their works." *Stewart v. Abend,* 495 U.S. 207, 217, 110 S.Ct. 1750, 1758, 109 L.Ed.2d 184 (1990). The Court in *Stewart* described the history of the renewal right and its current status:

> In its debates leading up to the Copyright Act of 1909, Congress elaborated upon the policy underlying a system comprised of an original term and a completely separate renewal term.... "It not infrequently happens that an author sells his copyright outright to a publisher for a comparatively small sum." H.R.Rep. No. 2222, 60th Cong., 2d Sess., 14 (1909). The renewal term permits the author, originally in a poor bargaining position, to renegotiate the term of the grant once the value of the work has been tested. "[U]nlike real property and other forms of personal property, [a copyright] is by its very nature incapable of accurate monetary evaluation prior to its exploitation." 2 M. Nimmer & D. Nimmer, Nimmer on Copyright, § 9.02, p. 9–23 (1989).... "If the work proves to be a great success and lives beyond the term of twenty-eight years, ... it should be the exclusive right of the author to take the renewal term, and the law should be framed ... so that [the author] could not be deprived of that right." H.R.Rep. No. 2222, *supra,* at 14. With these purposes in mind, Congress enacted the renewal provision of the Copyright Act of 1909, 17 U.S.C. § 24 (1976 ed.).[6]

*Id.* 495 U.S. at 218, 110 S.Ct. at 1759.

■ Although *Stewart* tells us what a renewal right is and why it is important to

---

**5.** Section 24 of the 1909 Act provided and § 304(a) of the 1976 Act now provides in pertinent part:

> [T]he author of [a copyrighted] work, if still living, or the widow, widower, or children of the author, if the author be not living, or if such author, widow, widower, or children be not living, then the author's executors, or in the absence of will, his next of kin shall be entitled to a renewal and extension of the copyright in such work for a further term of twenty-eight years ["forty-seven years" in the

1976 Act] when application for such renewal and extension shall have been made to the copyright office and duly registered therein within one year prior to the expiration of the original term of copyright.

17 U.S.C. § 24 (1976); 17 U.S.C. § 304(a) (1988).

**6.** "With respect to works in their original or renewal term as of January 1, 1978, Congress retained the two-term system of copyright protection in the 1976 Act. See 17 U.S.C. §§ 304(a) and (b) (1988 ed.) (incorporating language of 17 U.S.C. § 24 (1976 ed.))." *Stewart,* 495 U.S. at

federal copyright law, it does not tell us how an author may convey that right. In the present case, two factors are of primary importance: (1) The Jobim–Arapua contracts did not explicitly convey renewal rights; and (2) the Jobim–Arapua contracts contain no language that is ambiguous enough to permit the inference that they implicitly conveyed renewal rights. Together, these factors compel the conclusion that Jobim did not, as a matter of law, convey renewal rights to Arapua in 1958–60. The reasoning underlying that conclusion follows.

 First, there is a strong presumption against the conveyance of renewal rights:

> [I]n the absence of language which expressly grants rights in "renewals of copyright" or "extensions of copyright" the courts are hesitant to conclude that a transfer of copyright (even if it includes a grant of "all right, title and interest") is intended to include a transfer with respect to the renewal expectancy.

2 Nimmer on Copyright § 9.06[A] at 9–71 to 9–72. The seminal case is *Fred Fisher Music Co. v. M. Witmark & Sons*, 318 U.S. 643, 63 S.Ct. 773, 87 L.Ed. 1055 (1943), in which the Supreme Court held that "an assignment by the author of his 'copyright' in general terms did not include conveyance of his renewal interest." *Id.*, 318 U.S. at 653, 63 S.Ct. at 777. In other words, a contract that conveyed original term copyrights without mentioning future rights did not as a matter of federal copyright law convey renewal rights. See also *Epoch*

*Producing Corp. v. Killiam Shows, Inc.*, 522 F.2d 737, 747 (2d Cir.1975) (general transfer by author of original copyright without mention of renewal rights conveys no interest in renewal rights without proof of contrary intention), cert. denied, 424 U.S. 955, 96 S.Ct. 1429, 47 L.Ed.2d 360 (1976); accord *Bartok v. Boosey & Hawkes*, 523 F.2d 941, 949 n. 12 (2d Cir.1975); *Rohauer v. Killiam Shows, Inc.*, 551 F.2d 484, 490–91 (2d Cir.), cert. denied, 431 U.S. 949, 97 S.Ct. 2666, 53 L.Ed.2d 266 (1977); *Followay Prods., Inc. v. Maurer*, 603 F.2d 72, 75 (9th Cir.1979). The presumption against conveyance of renewal rights serves the congressional purpose of protecting authors' entitlement to receive new rights in the 28th year of the original term. In the present case, Jobim's 1958 and 1960 contracts with Arapua were silent as to renewal rights.[7] Accordingly, under federal copyright law Jobim retained renewal rights to the Five Songs and could validly assign them to Corcovado.

Defendants cite *Siegel v. National Periodical Publications, Inc.*, 508 F.2d 909, 913–14 (2d Cir.1974), for the proposition that "general words of assignment can include renewal rights if the parties had so intended. That intent is to be determined by the trier of the facts." In *Siegel*, however, "the agreement by the parties did not simply purport to convey a copyright.... Rather, [it] conveyed the 'exclusive right to the use [of the intellectual property] ... *forever*'"; "[m]oreover, the authors agreed not to [employ or sell said property] at any time *hereafter.*" *Id.* (emphasis in original). *Siegel* is consistent with *Fred Fisher* because the contract language in

---

219, 110 S.Ct. at 1759. Works created on or after January 1, 1978 or created but not published or copyrighted before January 1, 1978 are subject to a single term consisting of the author's life plus 50 years, without possibility of renewal. See 17 U.S.C. §§ 302–303.

7. In defendants' translation from the Portuguese, the assignment clause of the 1958 contract conveying the rights to "Desafinado" reads as follows:

> The Authors assign and transfer to the Publisher, the full property, for the exercise of the corresponding rights in all the countries of the world, of their ownership rights in the musical composition of which they are the authors with the corresponding lyrics, titled

> "Desafinado" soft slow samba, in the form, scope and application which they hold by virtue of the laws and treaties in force and those which become effective hereinafter.

Plaintiff's translation of the same clause is as follows:

> The AUTHORS assign and transfer to the PUBLISHER, in full ownership, for the exercise of the appropriate authority, in all countries of the world, their copyright to the musical composition authored by them, with the respective lyrics, which is entitled:
>> Desafinado—samba song
> in such manner, to such extent and with such application as provided for by current or future laws and treaties.

*Siegel,* by using the words "forever" and "hereafter," embraced a renewal term copyright. In this case, unlike *Siegel,* the contracts conveying original term rights contain no such language. Hence, as noted above, they did not convey renewal rights.

■ Second, contracts that are clear and unambiguous are not made ambiguous "simply because the parties urge different interpretations." *Seiden Assocs. v. ANC Holdings,* 959 F.2d 425, 428 (2d Cir.1992). The parties' different interpretations of the Jobim–Arapua contracts do not make those contracts ambiguous. On the contrary, it is clear that Jobim did not convey his renewal rights to Arapua.

■ Citing the English case of *Campbell Connelly & Co., Ltd. v. Noble,* 1 All E.R. 237 (1963), defendants argue that Brazilian law should apply to the interpretation of the Jobim–Arapua contracts. We disagree. We believe that *Campbell Connelly* is distinguishable on the facts,[8] and, in any event, conclude that its reasoning could not be applied here to preclude the use of United States law. Factors arguing for the application of United States law include the following: United States renewal copyrights reflect a vital policy of United States copyright law; the forum in which the Jobim–Arapua contracts are to be construed is in the United States (for reasons set forth above); and the place of performance of the contracts is also the United States. Under these circumstances, we believe that United States law is applicable. See *Wells Fargo Asia Ltd. v. Citibank, N.A.,* 936 F.2d 723, 726 (2d Cir.1991) (quoting *Wells Fargo Asia Ltd. v. Citibank, N.A.,* 695 F.Supp. 1450, 1453–54 (S.D.N.Y.1988)); 3 Nimmer on Copyright § 17.11[B] at 17–71 to 17–78.

The judgment of the district court is reversed and the case is remanded to the district court for further proceedings consistent with this opinion.

---

**8.** *Campbell Connelly* was a suit by a publisher against a composer asserting rights under a contract in which the composer assigned copyrights to the publisher. It is as though Arapua or its assignees were suing on Arapua's contract with Jobim.