**GUARDIAN MUSIC CORPORATION,**
Plaintiff,

v.

**JAMES W. GUERCIO ENTERPRISES,
INC., Defendant.**

No. 03 Civ. 9687(SAS).

United States District Court,
S.D. New York.

July 6, 2006.

James Cinque, Cinque & Cinque, P.C., New York, NY, Steven Ames Brown, Steven Ames Brown Entertainment Law, San Francisco, CA, for Plaintiff.

Helene M. Freeman, Dorsey & Whitney LLP, New York, NY, for Defendant.

## *OPINION AND ORDER*

SCHEINDLIN, District Judge.

### I. INTRODUCTION

Guardian Music Corporation ("Guardian"), a music publishing company, asserts a breach of contract claim[1] against James W. Guercio Enterprises, Inc. ("Guercio"), another music publishing company, and requests two forms of relief. *First*, Guardian demands an accounting of all revenue derived from Guercio's exploitation of Louis "Moon Dog" Hardin's compositions.[2] *Second*, Guardian seeks to impose a con-

---

1. Guardian alleges that its rights in the Hardin compositions derive both from its co-ownership of those compositions and from contractual rights. *See* Second Amended Complaint ("Compl.") ¶ 9.

2. *See id.* ¶ 13.

structive trust on Guercio's interest in the Hardin compositions and on monies Guercio received from their commercial exploitation.[3]

Guardian moves for summary judgment with respect to liability on both of its claims.[4] Guardian argues that summary judgment is appropriate because Guardian and Guercio are co-owners of the original and renewal terms of certain Hardin copyrights,[5] and regardless of copyright ownership, a 1969 agreement contractually obligates Guercio to share revenue derived from the exploitation of the Hardin copyrights with Guardian.[6]

Guercio cross-moves for summary judgment on both claims on four separate grounds. *First,* Hardin never conveyed renewal term rights to Guardian.[7] *Second,* Guardian cannot enforce an agreement (which, Guardian alleges, grants renewal term rights) because Guardian has breached a material term of that agreement.[8] *Third,* Guardian's claims are barred by laches.[9] *Fourth,* Guardian cannot maintain this action without joining Hardin's heirs as parties.[10]

3. *See id.* ¶¶ 16–22.

4. *See* Plaintiff's Memorandum of Law in Support of Motion for Summary Judgment ("Pl. Mem.") at 2.

5. *See id.* at 3.

6. *See id.* at 12.

7. *See* Memorandum of Law in Support of Defendant's Motion for Summary Judgment ("Def.Mem.") at 7.

8. *See id.* at 13.

9. *See id.* at 15.

10. *See id.* at 17.

11. Glenn Collins, *Louis (Moondog) Hardin, 83, Musician, Dies* ("Hardin Obituary"), N.Y.

## II. FACTS

The following facts are undisputed. Hardin, "a mysterious and extravagantly garbed street performer,"[11] released two recordings of original music compositions in 1969 and 1971. Guercio produced both of these recordings, the first of which included the song "Lament."[12] On February 26, 1969, Hardin conveyed his original term musical copyrights to Skiff Music Corporation ("Skiff") in a written agreement (the "Songwriter's Agreement") that obligated Skiff to publish the assigned musical works and to pay Hardin royalties during the initial term of copyright.[13] Guardian is Skiff's successor in interest.[14] On March 6, 1969, Hardin entered into an agreement (the "Recording Agreement") with Poseidon Productions ("Poseidon"), a division of Guercio, pursuant to which Poseidon would produce recordings of Hardin's work.[15]

During 1969, Skiff and Archimedes, another division of Guercio, entered into an agreement (the "Co–Publishing Agreement") to which Hardin assented.[16] Under the terms of the Co–Publishing Agreement, Skiff conveyed to Archimedes a one-half interest in four Hardin compositions

Times, Sept. 12, 1999, at A47, Ex. 4 to Declaration of Don Williams, administrator of Archimedes Music, in support of defendant's motion for summary judgment ("Williams Decl.").

12. *See* Williams Decl. ¶ 4.

13. *See* Agreement Between Louis Hardin and Skiff Music Corporation ("Songwriter's Agreement"), Ex. 7 to Williams Decl.

14. *See* Compl. ¶ 7.

15. *See* Agreement Between Moon Dog and Poseidon Productions ("Recording Agreement"), Ex. 5 to Williams Decl.

16. *See* Agreement Between Archimedes Music and Skiff Music Corporation ("Co–Publishing Agreement"), Ex. 6 to Williams Decl.

(the "Split Compositions"), including "Lament," and a full interest in the remaining thirty Hardin compositions (the "Participating Compositions").[17] Skiff agreed to administer the Split Compositions, and Archimedes agreed to administer the Participating Compositions.[18] Each party agreed to pay the other one-half of all profits derived from exploitation of the compositions.[19]

For the 1969 compositions, the renewal term vested on January 1, 1998.[20] For the 1971 compositions, the renewal term vested on January 1, 2000.[21] Hardin died on September 9, 1999.[22] Pursuant to his will, Hardin left all of his copyrights to Illona Goebel Sommer, his German patroness.[23] In the spring of 1999, Andy Carthy, an English disc jockey known professionally as "Mr. Scruff," composed a hip-hop song titled "Get a Move On," in which he sampled Hardin's recording of "Lament" without authorization.[24] Through his English subpublisher, Guercio negotiated to obtain a half interest in the "Get a Move On" copyright.[25] "Get a Move On" became a hit in Europe and was subsequently licensed in several lucrative television commercial deals.[26]

## III. LEGAL STANDARD

### A. Standard of Review

Summary judgment is appropriate if the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[27] An issue of fact is genuine "if the evidence is such that a jury could return a verdict for the nonmoving party."[28] A fact is material when it would " 'affect the outcome of the suit under the governing law.' "[29] The moving party has the burden of demonstrating that no genuine issue of material fact exists.[30]

To defeat a motion for summary judgment, a party must raise a genuine issue of material fact that "does not rely on conclusory allegations or unsubstantiated speculation"[31] and raises more than a " 'metaphysical doubt as to the material facts.' "[32] In determining whether a genuine issue of material fact exists, the court must construe the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in that party's fa-

---

17. *See id.* § A ¶ 2, § B ¶ 2.

18. *See id.* § A ¶ 4, § B ¶ 4.

19. *See id.* § A ¶ 6, § B ¶ 3.

20. *See* 17 U.S.C. § 304(a)(1)(A) (2006).

21. *See id.*

22. *See* Hardin Obituary at A47.

23. *See* Last Will and Testament of Louis–Thomas Hardin (English Translation), Ex. 3 to Williams Decl. at 2.

24. *See* Williams Decl. ¶ 10.

25. *See id.* ¶ 11.

26. *See id.* ¶¶ 10, 13.

27. Fed.R.Civ.P. 56(c).

28. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). *Accord Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573, 579 (2d Cir.2006).

29. *Beth Israel Med. Ctr.*, 448 F.3d at 579 (quoting *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505).

30. *See, e.g., Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir.2005).

31. *Id.*

32. *McClellan v. Smith*, 439 F.3d 137, 144 (2d Cir.2006) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)).

vor.[33]

If the moving party will bear the burden of persuasion at trial, the burden at summary judgment is higher—the moving party must support its motion with credible evidence that would entitle it to a directed verdict if not controverted at trial.[34] "Summary judgment in favor of the party with the burden of persuasion, however, is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact."[35]

## B. Accounting and Constructive Trust

 "[O]ne joint owner is accountable to the others for their rateable share of the profits that he has realized from licensing of the work."[36] An accounting is an equitable remedy "designed to provide a means for compelling one, who because of a confidential or trust relationship has been entrusted with property of another, to render an account of his actions and for the recovery of any balance found to be due."[37] A party seeking the imposition of a constructive trust ordinarily must show: "(1) a confidential or fiduciary relation[ship], (2) a promise, express or implied, (3) a transfer made in reliance on

that promise, and (4) unjust enrichment."[38] Because the imposition of a constructive trust is an equitable remedy, however, it is not necessary to prove all of these factors.[39]

## C. Contract Interpretation

 Under New York law, this Court should interpret a written contract "so as to give effect to the intention of the parties as expressed in the unequivocal language they have employed."[40]

> When the question is the contract's proper construction, summary judgment may be granted when [the contract's] words convey a definite and precise meaning absent any ambiguity.... Contract language is ambiguous if it is capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages, and terminology as generally understood in the particular trade or business.[41]

The language of a contract is not ambiguous, however, simply because the parties

---

33. *See, e.g., Beth Israel Med. Ctr.*, 448 F.3d at 579.

34. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 331, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (Brennan, J., dissenting).

35. *Hunt v. Cromartie*, 526 U.S. 541, 553, 119 S.Ct. 1545, 143 L.Ed.2d 731 (1999).

36. 1 Melville B. Nimmer and David Nimmer, *Nimmer on Copyright* § 6.12[B] (2006). *Accord Stone v. Williams*, 970 F.2d 1043, 1051 (2d Cir.1992) (citing *Shapiro, Bernstein & Co. v. Jerry Vogel Music Co.*, 223 F.2d 252, 254 (2d Cir.1955) (per curiam), *modifying* 221 F.2d 569 (2d Cir.1955)). This rule continues under the current copyright law. *See* H.R.Rep. No. 94–1476, at 121 (1976), *reprinted in* 8 Nimmer app. 4 § 201 (2006).

37. *Bostic v. Goodnight*, 443 F.3d 1044, 1048 (8th Cir.2006). *See also Grace v. Bank Leumi Trust Co.*, 443 F.3d 180, 193 (2d Cir.2006) (an accounting is an equitable remedy).

38. *Bankers Sec. Life Ins. Soc. v. Shakerdge*, 49 N.Y.2d 939, 940, 428 N.Y.S.2d 623, 406 N.E.2d 440 (1980).

39. *See Latham v. Father Divine*, 299 N.Y. 22, 27, 85 N.E.2d 168 (1949).

40. *Cruden v. Bank of New York*, 957 F.2d 961, 976 (2d Cir.1992).

41. *Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566, 598 (2d Cir.2005) (quotations and citations omitted).

urge different interpretations,[42] or if one party's view "strain[s] the contract language beyond its reasonable and ordinary meaning."[43] "Ascertaining whether or not a writing is ambiguous is a question of law for the trial court."[44] "If the court finds that the contract is not ambiguous it should assign the plain and ordinary meaning to each term and interpret the contract without the aid of extrinsic evidence and it may then award summary judgment."[45] Ambiguous language, however, should be "construed against the interest of the drafting party."[46]

### D. Copyright Renewal Rights

Section 304(a)(1)(C) of Title 17 of the United States Code governs the duration of copyright renewals:

(I) [T]he author of such work, if the author is still living, (ii) the widow, widower, or children of the author, if the author is not living, (iii) the author's executors, if such author, widow, widower, or children are not living, or (iv) the author's next of kin, in the absence of a will of the author, shall be entitled to a renewal and extension of the copyright in such work for a further term of 47 years.[47]

The renewal period is not merely an extension of the original copyright term—it is a "new estate ... clear of all rights, interests or licenses granted under the original copyright."[48] Congress's purpose in creating this right of renewal was to "provide[ ] authors a second opportunity to obtain remuneration for their works."[49]

Under section 28 of the 1909 Copyright Act, which governs grants of copyrights executed before 1978, an assignment must be made by an "instrument in writing signed by the proprietor of the copyright."[50] Despite Congress's intention to protect authors "originally in a poor bargaining position,"[51] the Supreme Court and the Second Circuit have "consistently allowed authors to assign their rights in the renewal term before that term commences."[52] Such an assignment, however, carries "a strong presumption against conveyance,"[53] which may be rebutted "where the author includes language which *expressly grants* rights in renewals of copyright or extensions of copyright."[54] If an author specifically intended to convey renewal rights, however, courts have accepted general words of as-

---

42. *See id.*

43. *Id.* (quotations omitted).

44. *Sayers v. Rochester Tel. Corp. Supp. Mgmt. Pension Plan*, 7 F.3d 1091, 1094 (2d Cir. 1993).

45. *International Multifoods Corp. v. Commercial Union Ins. Co.*, 309 F.3d 76, 83 (2d Cir. 2002).

46. *Shaw Group, Inc. v. Triplefine Int'l Corp.*, 322 F.3d 115, 121 (2d Cir.2003).

47. 17 U.S.C. § 304(a)(1)(C) (2006).

48. *Stewart v. Abend*, 495 U.S. 207, 218, 110 S.Ct. 1750, 109 L.Ed.2d 184 (1990) (quotations omitted).

49. *P.C. Films Corp. v. MGM/UA Home Video*, 138 F.3d 453, 457 (2d Cir.1998) (quotations omitted).

50. 17 U.S.C. § 28 (1947).

51. *Stewart*, 495 U.S. at 218–19, 110 S.Ct. 1750.

52. *P.C. Films*, 138 F.3d at 457 (citing *Miller Music Corp. v. Charles N. Daniels, Inc.*, 362 U.S. 373, 375, 80 S.Ct. 792, 4 L.Ed.2d 804 (1960). *Accord Stewart*, 495 U.S. at 215, 110 S.Ct. 1750; *Corcovado Music Corp. v. Hollis Music, Inc.*, 981 F.2d 679 (2d Cir.1993)).

53. *Corcovado*, 981 F.2d at 684.

54. *P.C. Films*, 138 F.3d at 457 (citing *Corcovado*, 981 F.2d at 684) (emphasis added) (quotations and citations omitted).

signment as including renewal rights.[55] To ascertain an author's specific intention to convey renewal rights, courts may consider extrinsic evidence.[56]

If the author is alive at the time renewal vests and has not previously assigned the renewal term of copyright, then renewal rights vest in the author, and upon death the renewal copyright passes to the author's testamentary successors in the same manner as the rest of the author's property. If the author dies before renewal vests, then the author's statutory successors are not bound by any assignment that the author had executed, and the assignee takes nothing.[57] An assignment of renewal rights is therefore valid only if the assignor (i.e., the author) is alive when the renewal term vests. Until then, the renewal rights are expectancies, and "assignees of renewal rights take the risk that the rights acquired may never vest in their assignors," thus vitiating the assignment.[58]

## E. Material Breach

It is black-letter law that "[a] party to a contract who is already personally in default cannot, as a general principle ... maintain a suit for its breach, even if the other party subsequently breaches the contract as well [since] a contracting party cannot benefit from its own breach."[59] This rule is valid whether one seeks recovery at law or in equity.[60] A contracting party who hinders another party's performance, however, cannot rely on that nonperformance as a defense to a breach of contract claim.[61]

## F. Laches

The equitable defense of laches "bars a plaintiff from maintaining a suit if he unreasonably delays in filing a suit and as a result harms the defendant."[62] A party asserting this defense must prove "(1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense."[63] Laches is a defense against claims in equity, not claims at law, such as damages for non-performance of a contract.[64] Moreover, "[l]aches within the term of the statute of limitations is no defense at law."[65] "The determination of

55. See Siegel v. National Periodical Pubs., Inc., 508 F.2d 909, 913 (2d Cir.1974) (holding that the words "forever" and "hereafter" embraced the renewal term).

56. See, e.g., Venus Music Corp. v. Mills Music, Inc., 261 F.2d 577, 578–79 (2d Cir.1958).

57. See 3 Nimmer § 9.06[C] (2005) (citing, inter alia, Miller Music, 362 U.S. 373, 80 S.Ct. 792; Bartok v. Boosey & Hawkes, Inc., 523 F.2d 941 (2d Cir.1975)).

58. Miller Music, 362 U.S. at 377–78, 80 S.Ct. 792.

59. 23 Samuel Williston & Richard A. Lord, A Treatise on the Law of Contracts § 63:8 (4th ed.2002).

60. See Lawrence v. Miller, 86 N.Y. 131, 139–40 (1881).

61. See A.H.A. Gen. Constr. v. New York City Hous. Auth., 92 N.Y.2d 20, 31, 677 N.Y.S.2d 9, 699 N.E.2d 368 (1998).

62. Amtrak v. Morgan, 536 U.S. 101, 121–22, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002) (quotations omitted).

63. Id. (quotations omitted). See also Saratoga County Chamber of Commerce, Inc. v. Pataki, 100 N.Y.2d 801, 835, 766 N.Y.S.2d 654, 798 N.E.2d 1047 (2003) ("The essential element of [the laches] defense is delay prejudicial to the opposing party.").

64. See United States v. Gordon, 78 F.3d 781, 786 (2d Cir.1996).

65. United States v. Mack, 295 U.S. 480, 489, 55 S.Ct. 813, 79 L.Ed. 1559 (1935).

whether laches bars a plaintiff from equitable relief is entirely within the discretion of the trial court." [66]

## IV. DISCUSSION

### A. Guardian's Motion for Summary Judgment Is Denied

#### 1. Hardin Did Not Convey Renewal Term Rights

■ Guardian argues that the Co–Publishing Agreement includes Hardin as a party—or is at least ambiguous on this point—because the Co–Publishing Agreement required Hardin to "agree and accept and assent to the terms hereof" [67] and to sign the last page.[68] Viewed as an "entire integrated agreement," however, the Co–Publishing Agreement does not include Hardin as a party.[69] The first paragraph of the Co–Publishing Agreement identifies the parties—"AGREEMENT [is] made ... between ARCHIMEDES MUSIC ... and SKIFF MUSIC CORPORATION." [70] Moreover, the same paragraph that requires Hardin's assent does so "after the Agreement has been duly executed by *both* of the parties hereto." [71] No substantive clause other than the one requiring Hardin's assent mentions Hardin—and even that provision does not state that he has any rights or obligations under the Co–Publishing Agreement. A "reasonably intelligent person who has examined the context of the entire integrated agreement" could not conclude that Hardin was a party to the Co–Publishing Agreement.[72]

■ Because the contract language is unambiguous, this Court must "assign the plain and ordinary meaning to each term and interpret the contract without the aid of extrinsic evidence." [73] Paragraph 13 of section A of the Co–Publishing Agreement extends "[t]he rights of the parties hereto in and to the 'Split Composition(s)'" for "the term of copyright of the 'Split Composition(s)' or renewals or extensions thereof if same become available...." [74] As Hardin was not a party to the Co–Publishing Agreement, a conveyance of renewal term rights could not have been within the plain and ordinary meaning of this paragraph.

#### 2. The Language of the Co–Publishing Agreement Lacks the Requisite Specificity to Convey Renewal Term Rights

■ Even if Hardin were a party to the Co–Publishing Agreement, that Agreement did not convey any renewal term rights because it contains no express grant of such rights.[75] The Co–Publishing Agreement declares that the parties' rights "extend for the term of the copyright ... or renewals or extensions thereof *if same become available.*" [76] This provision neither grants renewal rights nor mentions Hardin by name and thus lacks the requisite specificity to overcome the

---

66. *Tri–Star Pictures v. Leisure Time Prods., B.V.,* 17 F.3d 38, 44 (2d Cir.1994).

67. Co–Publishing Agreement § B ¶ 2(b)(iv).

68. *See id.* at 11.

69. *Aetna,* 404 F.3d at 598.

70. *Id.* at 1 (emphasis in original).

71. *Id.* § B ¶ 2(b)(iv) (emphasis added).

72. *Aetna,* 404 F.3d at 598.

73. *International Multifoods,* 309 F.3d at 83.

74. Co–Publishing Agreement § A ¶ 13.

75. *See P.C. Films,* 138 F.3d at 457 (citing *Corcovado,* 981 F.2d at 684).

76. Co–Publishing Agreement § A ¶ 13 (emphasis added).

"strong presumption against conveyance."[77]

Guardian argues that the only reading of paragraph 13 of section A that gives effect to the plain language of the Agreement requires a conveyance of renewal term rights from Hardin to Skiff and Archimedes.[78] Guercio interprets the phrase "if same become available" to mean that were Hardin to convey his renewal term rights at a later date, the Co–Publishing Agreement between Archimedes and Skiff would continue to govern those rights just as it governed the original term rights.[79] But because it is beyond cavil that Hardin is not a party to the Co–Publishing Agreement, paragraph 13 cannot constitute a conveyance from Hardin to Guardian and Guercio. Guercio's interpretation of paragraph 13 is thus the only sensible one in the context of the entire Agreement.

Accordingly, Guardian's motion for summary judgment is denied, and Guercio's cross-motion for summary judgment is granted with respect to renewal term rights. Nonetheless, Guardian may still have a claim for an accounting and for a constructive trust on revenue deriving from the original term of the Hardin copyrights, which expired on December 31, 1997 (for the 1969 compositions) and on

December 21, 1999 (for the 1971 compositions).

## B. Guercio's Motion for Summary Judgment with Respect to the Co–Publishing Agreement Is Denied

Guercio argues that because Guardian has failed to administer the Split Compositions as the Co–Publishing Agreement required, Guardian materially breached the Co–Publishing Agreement and therefore cannot enforce it.[80] As there is a genuine issue of material fact on this claim, summary judgment must be denied. Guardian points out the following issues of material fact that preclude summary judgment on this claim. *First,* Guardian's purported breach could not have been material since Guercio controlled eighty-two percent of the catalog (as measured by number of songs—thirty of thirty-four).[81] *Second,* Guercio hindered Guardian's performance by usurping Guardian's administrative duties.[82] *Third,* Guardian did administer the Split Compositions until at least 1972.[83] Because a factfinder could reasonably find from this record that Guardian met its obligations under the Co–Publishing Agreement,

---

77. *Corcovado,* 981 F.2d at 684.

78. *See* Pl. Mem. at 6–7.

79. *See* 4/3/06 Transcript of Conference at 22–23.

80. This affirmative defense is valid only if Guardian seeks to enforce the Co–Publishing Agreement. If, on the other hand, Guardian seeks to enforce its property rights in the Split Compositions (rights deriving from the Songwriter's Agreement with Hardin), then its alleged material breach of the Co–Publishing Agreement is no defense. *See supra* note 1.

81. *See* Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment ("Pl.Mem.Opp.") at 12 (citing 1969

Copyright Registration Certificates, Ex. 1 to 4/12/06 Declaration of Helene M. Freeman, counsel to defendant ("Freeman Decl."); 1971 Copyright Registration Certificates, Ex. 2 to Freeman Decl.).

82. *See* Pl. Mem. Opp. at 12–13 (citing Williams Decl. ¶¶ 6–8; 4/27/06 Declaration of Alfred Brown, president of plaintiff corporation ("Supp. Brown Decl.") ¶¶ 4–5).

83. *See* Pl. Mem. Opp. at 13–14 (citing Deposition of E. Judith Hirschman Berger, former administrator of Skiff Music Corporation at 17:2–24).

Guercio's motion for summary judgment on Guardian's material breach is denied.

### C. Guercio's Motion for Summary Judgment with Respect to Laches Is Denied

 Guercio asserts the affirmative defense that laches bars Guardian's action. Laches is an equitable defense that cannot be asserted to bar a claim for damages—a legal claim governed by New York's six-year statute of limitations for breach of contract actions. Even though Guardian asserts a breach of contract claim, Guardian seeks two equitable remedies—accounting and constructive trust—for which the defense of laches is available.[84]

Construing the evidence in the light most favorable to Guardian, there exists a genuine issue of material fact precluding summary judgment for Guercio on its laches defense. While it is true that for over twenty years Guardian received no accountings and no payments from Guercio,[85] Guardian had "no reason to believe that any money had been earned in the decades before."[86] Guercio has not alleged that Guardian knew of Guercio's exploitation of the Hardin compositions until weeks before filing the present action in December of 2003.[87] Moreover, Guercio's assumption of administrative control over the entire Hardin catalogue hindered Guardian's ability to discover Guercio's exploitation.[88] Because a factfinder could conclude on this record that Guardian did not unreasonably delay commencing this action, Guercio's motion for summary judgment with respect to laches is denied.

### D. Guercio's Motion for Summary Judgment with Respect to Joinder Is Denied

 Guercio claims that Guardian cannot maintain this action without joining Hardin's heirs.[89] Guercio is simply wrong—this dispute is between two music publishing companies and does not require adjudication of the rights of any of Hardin's testamentary or statutory successors. Guardian seeks only its putative share of the publisher's profits from the exploitation of the Hardin compositions. Because Guardian has no claim for profits realized during the renewal term,[90] the rights of Hardin's successors are not implicated, as their rights vested on or after the vesting of renewal rights. Complete relief therefore can be accorded among the current parties and disposition of this case will not impair the ability of Hardin's heirs to protect their interest in the renewal term of the Hardin compositions.[91]

## V. CONCLUSION

For the foregoing reasons, Guardian's motion for summary judgment is denied. Guercio's motion for summary judgment is granted on the ground that Guardian has no claim to the renewal terms of the copyrights. With respect to Guardian's claim for its share of profits from the exploitation of the Hardin compositions during the original terms of the copyrights, a genuine issue of material fact precludes summary judgment for Guercio on its defenses of prior material breach and laches. Finally,

---

**84.** *See, e.g., Gordon,* 78 F.3d at 786.

**85.** *See* Supp. Brown Decl. ¶¶ 3–5.

**86.** Pl. Mem. Opp. at 16. *See also* Supp. Brown Decl. ¶¶ 4–5.

**87.** *See* Pl. Mem. Opp. at 16–17.

**88.** *See id.;* Supp. Brown Decl. ¶¶ 4–5.

**89.** *See* Def. Mem. at 17.

**90.** *See supra* Part IV.A.

**91.** *See* Fed.R.Civ.P. 19(a).

Guercio's motion for summary judgment based on failure to join necessary parties is denied. The Clerk of the Court is directed to close these motions [numbers 27 and 36 on the docket sheet]. A conference is scheduled for July 17, 2006, at 4:30 p.m.

SO ORDERED.